**CONTINENTAL SOUTHLAND SAVINGS & LOAN ASS'N v. JONES.**

**No. 2026.**

Court of Civil Appeals of Texas. Eastland.

May 31, 1940.

A. K. Doss and Kirby, King & Overshiner, all of Abilene, for appellant.

Cox & Hayden, of Abilene, for appellee.

FUNDERBURK, Justice.

This suit arose out of a written contract which, because its construction is deemed controlling, we here set out as follows:

"The State of Texas
"County of Taylor

"This agreement made and entered into on this the 1st day of March, 1937, by and between Continental Southland Savings & Loan Association, hereinafter called Vendor, and H. E. Jones, hereinafter called Vendee (whether one or more), witnesseth:

"Vendor by these presents agrees to sell and convey by good and sufficient deed to Vendee who agrees to purchase the same, that certain lot, tract or parcel of land, together with all improvements thereon, situated in Taylor County, Texas, known as

"Lot 11 and the North 20 feet of Lot 10, Block 3, Heyck Subdivision to the City of Abilene, Taylor County, Texas, together with all improvements located thereon, and being better known as 625 Victoria Street.

"The purchase price of said property is $2,250.00, payable by Vendee to Vendor as follows: $50.00 cash upon the execution of this contract, the receipt of which is hereby acknowledged, with the balance of the consideration named herein payable to the order of Vendor at its office in Dallas, Texas, in monthly installments of $30.00 each, the first installment to become due and payable on or before the 1st day of April, 1937, with one installment maturing on or before the 1st of each succeeding month thereafter until paid, together with interest hereon at the rate of seven per cent per annum, payable monthly as it accrues and included in each installment.

"Vendor agrees that when $250.00 of the purchase price named herein has been paid, to execute a deed to Vendee conveying said premises, and Vendee agrees to execute to Vendor a note for the sum of $2,000.00 to be payable in monthly installments of $30.00 each, together with interest thereon at the rate of seven per cent per annum, payable monthly as it accrues, and included in each installment; said note to be payable at Dallas, Texas, secured by a vendor's lien retained in said deed, and a deed of trust with the usual covenants and power of sale.

"Vendor agrees to furnish (a) an abstract of title or (b) title policy (Seller's Option) to said property which is to be conveyed free and clear of all encumbrances except that mentioned herein, and Vendee agrees that within ten days after good and marketable title is presented, to immediately accept same and consummate this contract. If Vendor fails to furnish good and marketable title to said premises, all money paid hereon, less the reasonable rental value of said property, is to be refunded to Vendee upon the surrender and cancellation of this contract.

"Vendee agrees that, if default is made in making the payments as herein provided or in the performance of the agreements and covenants herein contained or either of them, this contract at Vendor's option shall become null and void. Should such option be exercised, Vendor shall be released from further obligations hereunder and all sums paid hereon shall be forfeited as liquidated damages and as the agreed rental value of said property. Vendee further agrees, in case of such default, to give peaceable possession of said property, and any occupancy of said premises by Vendee subsequent to date of default shall be as tenant only and at a monthly rental equal in amount to the installments hereinabove stipulated.

"All contracts, agreements, statements and representations heretofore made by the parties hereto or their agents are merged into and are superseded by this agreement.

"Taxes for the current year, current rents and insurance are to be prorated to date of this contract.

"Vendors are to pay taxes and insurance out of the $30.00 monthly installments.

"Vendee agrees to, within six months' time, improve place to the extent of $250.00."

H. E. Jones, "Vendee" in said contract, sued Continental Southland Savings & Loan Association, a corporation, "Vendor", seeking recovery of $620 (being the $50 cash payment and nineteen of the $30 installment payments as provided in said contract), and $972 as the value and cost of improvements made upon said property, less a credit of $345, as the alleged reasonable rental value of said property for twenty-three months during which it was occupied by plaintiff.

It was alleged that payments aggregating $620, including the down payment of $50, constituted all of the installments due up to and including October 1, 1938. The suit was filed April 5, 1939.

In a non-jury trial judgment was rendered for the plaintiff awarding him recovery of $683.25, but denying his claim of an equitable lien on said property. The defendant has appealed.

It will be convenient to refer to appellant as "Vendor" and the appellee as "Vendee", the same as in said contract.

Vendor first contends that the court erred in overruling its general demurrer to Vendee's Second Amended Original Petition (trial pleading). We think said pleading does fail to state a cause of action, but we are not entirely persuaded to that view by the reasons urged by Vendor.

It is first necessary to determine the real nature of the suit which is not entirely clear when plaintiff's petition is read, as it should be, in connection with the contract attached as an exhibit to the pleadings.

■ We shall not do more than simply state our conclusion that Vendee's petition shows no ground of recovery based upon fraud and deceit. There is so certainly absent the averment of essential elements to show a cause of action for the cancellation of the contract because of fraud that the mere statement to that effect is deemed sufficient.

■ In our opinion, Vendee's petition indicates a wrong construction of the contract, particularly the provision reading thus: "Vendor agrees to furnish (a) an abstract of title or (b) title policy (Seller's Option) to said property, which is to be conveyed free and clear of all encumbrances except that mentioned herein, and Vendee agrees that within ten days after good and marketable title is presented to immediately accept same and consummate this contract." In one sense, of course, the contract was *consummated*, when it was executed by the parties, but that cannot be the same sense in which the Vendee was obligated "within ten days after good and marketable title is presented to immediately accept same and *consummate this contract*." (Italics ours.) What, then, was intended to constitute a consummation of the contract? There are, we think, most persuasive reasons to support the conclusion that the acceptance

of title by vendee was a condition precedent to any obligation on his part to improve the place to the extent of $250, or even to make the first installment payment of $30 on April 1, 1937, unless under the existing circumstances more time as a matter of fact was reasonably necessary (a) for vendor to furnish either an abstract of title or title policy, (b) for vendee, if abstract (instead of title policy) was furnished, to have same examined and (c) within ten days to accept the title, or title policy. In the absence of such acceptance, expressly or impliedly, the only rights or duties of the parties under the contract were for Vendor to refund the $50 cash payment and possibly, under exceptional circumstances, a $30 installment, less the reasonable rental value of the property, and for the Vendee to yield the possession, thus discharging the contract according to its terms. In other words, the contract manifests the intention, in our opinion, that it was not to be, or become, really a contract for the sale and purchase of the property, save upon an acceptance of the title which Vendor was able to convey, or the title insured as provided.

■ As a contract for the sale and purchase of land, as a transfer of equitable title to the land from the Vendor to Vendee, it was never consummated, never became effective, unless from the conduct of the parties there was an implied acceptance of such title as the Vendor was able to convey. The Vendee by entering into possession of the property, by expending for improvements thereon the sum of $972, by paying nineteen of the $30 monthly installments of the purchase price, by never demanding an abstract of title or a title policy, by not even demanding a deed when the $250 had been paid, as provided in the contract, undoubtedly, we think, had an equitable title to the land and, if so, it was because of an implied acceptance of the title, thereby · effecting a consummation of the contract as one for the sale and conveyance of the land, rather than one merely providing for the refund of the initial payments, less the reasonable rental value as compensation for the time occupied by Vendee. Vendee, by paying or tendering the remaining installments, if in fact they were payments on the purchase price, before a forfeiture was duly declared because of defaults, could have enforced the transfer to him of whatever title the Vendor had. Assuming the existence of circumstances authorizing him to do so, Vendee having failed to exercise his right to refuse acceptance of the title and thereby having consummated the contract according to its terms, and having, according to the allegations of his own petition, after long recognition of the existence of the contract defaulted for several months in the payment of the $30 installments had no right, according to the contract, to terminate it, and therefore of course no right to recover any part of the $620 paid upon the purchase price, or any part of $972 expended for improvements upon the place.

■ Under any reasonable construction of the contract no cause of action was shown by the allegations of Vendee's petition. Even if Vendor had no good merchantable title, and for that reason was unable to convey such title, it had the option to substitute therefor a "title policy", meaning, we take it, title insurance. In order to state a cause of action, of which the fact of inability of Vendor to convey good and merchantable title was an essential element, it was necessary to allege facts to show not only that the Vendor was unable to convey the specified title, but also that it refused or was unable to deliver a "title policy." If a promise sought to be enforced is to do one or the other of two things at the option of the promisor, then there must be alleged a failure or refusal to do either. It was necessary to stipulate in the contract, as was done, that said property "is to be conveyed free and clear of all encumbrances except that mentioned herein" for two or more reasons not at all inconsistent with the optional right of Vendor to substitute title insurance for good marketable title, or at any rate an abstract showing good and marketable title. In the first place, it was necessary so to provide in order to meet the contingency that Vendor did not have title of the character specified and did not exercise its option to provide title insurance. Said provision was necessary in such case to fix the measure of Vendee's right to refuse acceptance of the title and thereby refuse to consummate the contract as one for the sale and purchase of the land. In the next place, said provision was necessary if title insurance was provided as defining the sub-

ject matter of the insurance and specifying the exclusions therefrom.

If Vendee had the right asserted to terminate the contract under the circumstances disclosed by his petition and to recover the $620 paid upon the purchase price less the reasonable rental value of the property, he would, nevertheless, have no right to recover for the value of improvements made, or enhancement of the value of the property from such improvements simply for the reason that the contract does not so provide. The contract provided that "all money paid hereon less the reasonable rental value of said property is to be refunded to Vendee upon the surrender and cancellation of this contract." The $250 to the extent of which Vendee agreed that within six months he would improve the place is not within the reasonable import of the words "all money paid hereon." The improvements and the value of the improvements were to belong to Vendee. In making the improvements he was improving his own property. The only purpose of the covenant obligating Vendee to make improvements to the extent of $250 was to enhance the value of Vendor's security for payment of the purchase price. This particular matter is rendered of no great importance by the conclusions already stated. We merely point out that under no circumstances could the Vendee recover, as a contract right, the value of the improvements or enhancement in value of the property resulting from the improvements.

There is another and independent reason why the averments of Vendee's petition show no right to recover. This reason applies even if Vendee's construction of the contract is right. The averments show mutual indulgences and delays. Just as Vendor could not, over a considerable period of time, accept delayed payments of the $30 installments (if it did do so, a question hereafter to be noticed) and without notice and giving reasonable opportunity to pay up the arrears declare a forfeiture of the contract, so could Vendee not indulge delay of the Vendor in furnishing an abstract for nearly two years which should have been furnished, or the equivalent thereof supplied within a few days or weeks, all the while recognizing the contract by the payment of installments and then without notice and affording reasonable opportunity to present a good and marketable title declare, in effect, a forfeiture of the contract. Buck v. DeShazo, Tex.Civ.App., 5 S.W.2d 878, and authorities cited; Caprito v. Grisham-Hunter Corp., Tex.Civ.App., 128 S.W.2d 149, and authorities cited.

By reason of the contract being set out as an exhibit to Vendee's petition, said pleading was insufficient to show that the contract had not been forfeited by the defaults of the Vendee in making the installment payments. This conclusion is based upon the contract provision reading "If default is made in making the payments as herein provided or in the performance of the agreements and covenants herein contained or either of them this contract at Vendor's option shall become null and void * * * *and any occupancy of said premises by Vendee subsequent to date of default shall be as tenant only and at a monthly rental equal in amount to the installments hereinabove stipulated.*" (Italics ours.) It was necessary for Vendee to aver facts to rebut the presumption that the acceptance of delayed payments did not constitute rentals. Whether the acceptance of the money was as rentals, or as purchase price, is not important in the disposition of this appeal, but is mentioned in view of future proceedings.

We shall not discuss questions which may not be expected to arise in future proceedings. It may be said, however, that in our opinion if it be material for Vendee to establish as an issue that Vendor could not convey good and marketable title, it would be necessary to allege the facts from which such a conclusion would follow, the conclusion being, we think, one of law and not of fact.

In the proof of such an issue the opinion of an attorney given to a third person would be hearsay and incompetent as evidence.

For the reasons given, it is our conclusion that the judgment should be reversed and the cause remanded, which is accordingly so ordered.