Marshall E. Boykin and Jimmie Boykin v. Commissioner.
Boykin v. Commissioner
Docket No. 94800.
United States Tax Court
T.C. Memo 1963-343; 1963 Tax Ct. Memo LEXIS 5; 22 T.C.M. (CCH) 1800; T.C.M. (RIA) 63343; December 30, 1963
Wm. Bernard Clinton, 1016 Dallas Athletic Club Bldg., Dallas, Texas, for the petitioners. James F. Hart, for the respondent. FAY
Memordandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in the petitioners' income tax for the year 1956 in the amount of $13,516.72. The principal issue for decision is whether petitioners owned a certain property known as the Hayter Farm for a period of more than six months prior to its sale. [1] An alternative issue is whether the Hayter Farm was held by petitioners primarily for sale to customers in the ordinary course *6 of their business. Findings of Fact Some of the facts have been stipulated and this stipulation of facts, together with the exhibits attached thereto, is incorporated herein and made a part of our Findings by this reference. Petitioners are husband and wife and for the year 1956 timely filed a joint income tax return with the district director of internal revenue at Dallas, Texas. Petitioner Marshall E. Boykin will hereinafter be referred to as petitioner. During the year 1956 petitioner was engaged in the business of subdividing real property and in the business of constructing and leasing commercial buildings in the Abilene, Texas, area. *7 Petitioner kept his records and filed his income tax returns on the cash basis. The property involved in this case is a farm of approximately 860 acres (hereinafter referred to as the Hayter Farm) in Taylor County, Texas, that was owned by W. O. Hayter, Jr., prior to its sale to petitioner. Sometime during the first two months of 1956, Hayter was approached by A. J. Carriger, an Abilene real estate agent employed by the firm of W. Wiley Cox Real Estate and Insurance with respect to the possible sale of the Hayter Farm. Hayter indicated he would be interested in selling the Hayter Farm if he could obtain a price of approximately $300,000. No agreement was reached between Carriger and Hayter and their negotiations ended. Sometime in the latter part of February and about one or two weeks after Carriger and Hayter had discussed the sale of the Hayter Farm petitioner approached Hayter and offered to buy the Hayter Farm as well as a residence Hayter owned in Abilene, Texas. On March 5, 1956, petitioner and Hayter entered into an agreement which provided in part as follows: WITNESSETH: 1. Seller hereby agrees to sell to purchaser and Purchaser agrees to purchase from Seller the following *8 described property, * * *. [A description of the subject property is then set forth.] 2. The total price to be paid for the above described seven tracts of land is $350,000.00, payable as follows: (a) $30,000.00 cash, which purchaser has deposited with W. O. Hayter, Jr. of Abilene, Texas, said sum to be applied on the total consideration if this transaction is consummated, and if this transaction is not consummated, to be delivered in accordance with the terms and provisions of this contract; (b) The balance of $320,000.00 shall be evidenced by the execution of one certain promissory note by Purchasers herein payable to the order of W. O. Hayter, Jr. in Abilene, Texas, said note to be of even date with this contract, with interest thereon at the rate of five per cent per annum, payable as follows: $20,000.00 shall be due and payable on or before January 10, 1957; $37,500.00 plus all accrued interest hereon shall be due and payable on or before September 5, 1957; with a like installment of $37,500.00 plus all accrued interest being due and payable on or before the 5th day of September of each and every year thereafter until the entire sum, both principal and interest, has been *9 fully paid. Said note to be secured by the vendor's lien and deed of trust with power of sale and with usual covenants as to taxes, insurance and default. 3. It is understood and agreed between the parties hereto that there is now due and secured by liens against the first tract described herein, the sum of $11,495.79 to Southwestern Life Insurance Company, representing a loan against the above property. It is further understood that there will be due on July 1, 1956, a semi-annual payment thereon in the sum of $693.00, being $434.34 principal and $258.66 interest. The said Purchaser agrees to make the payments due on such loan as they accrue until such time as this transaction is consummated. At the time of closing all such payments made on said loan by Purchaser will be deducted from the purchase price of the property herein described, and the said above mentioned notes shall be reduced by said sums so deducted. At the time of closing the balance then remaining on the above described loan will be paid off by Seller and the lien securing said note will be duly released. 4. It is further understood between the parties hereto that there is a loan secured by liens against the last *10 six tracts described hereinabove in the amount of $67,999.98, now held by Citizens National Bank in Abilene, and Seller agrees to pay off said loan at the time of closing. It is further understood and agreed, however, that this transaction will not be consummated until such time as said $67,999.98 loan has been fully paid by Seller herein, unless all parties hereto agree to the closing at an earlier date. Immediately upon payment of said loan to Citizens National Bank in Abilene, all parties hereto agree that this contract will be consummated. 5. Seller agrees to furnish to purchaser complete abstracts of title to all of the above described property as soon as reasonably possible after the payment of the loan to the Citizens National Bank in Abilene. Purchaser agrees that within ten days from the receipt of said abstract, either to accept the title as shown by said abstract or to return the same to Seller with the objections in writing to the title to said premises. If said abstract is not returned to Seller with the objections to the title in writing to said premises within the time herein provided, Purchaser's action in not so returning said abstract and objections in writing *11 will constitute acceptance of the title to said premises. If Purchaser furnishes written objections to said title as above provided, Seller shall have a reasonable time to cure said objections and show good and marketable title. In the event of failure to furnish good and marketable title, the purchase money hereby deposited with Seller shall be returned to the purchaser upon the cancellation and return of purchaser's copy of this contract. 6. This transaction is to be consummated by Seller delivering to Purchaser a good and sufficient Warranty Deed to the above described property for the delivery to Seller by Purchaser of the consideration above stated. 7. If Purchaser defaults on this contract, the purchase money hereby deposited with Seller shall be retained by Seller as liquidated damages for said default; or Seller may enforce specific performance of this contract. 8. Taxes for the current year, current rents, insurance, interest (if any), and delay rentals on oil and/or gas leases are to be pro-rated as of the date of this contract. 9. Purchaser shall have possession of the first tract described hereinabove by April 1, 1956. Purchaser agrees to lease to Seller the last *12 six tracts described hereinabove effective as of the date of this contract at an annual cash rental of $2,500.00 per year, payable in advance. Such lease to be the usual farming and agricultural lease, but shall not affect any oil and/or gas or other mineral leases now existing or hereafter executed on the above described property. * * *
On March 6, 1956, petitioner was furnished a Title Opinion on the Hayter Farm which showed that the property was encumbered by a lien in the amount of $67,999.98 in favor of the Citizens National Bank of Abilene. On March 7, 1956, the petitioner and Hayter executed an addendum to the March 5, 1956, contract which provided as follows: In addition to the provisions of the foregoing contract, of which this addendum is hereby made a part, purchaser and seller therein hereby further agree as follows: 1. It is agreed and understood that the property described in said contracts shall be conveyed free and clear of all liens and encumbrances except those to be reserved by seller as heretofore set out in said contract; however, in the event purchaser wishes to assume the unpaid balance of the loan now held by South-western Life Insurance Company *13 secured by liens against Tract No. 1 and described in the foregoing contract, then purchaser shall have such option and the balance due thereon shall be deducted from the purchase price. 2. Seller agrees to make all payments due on the foregoing indebtedness due the Citizens National Bank and the indebtedness due Southwestern Life Insurance Company as described in the foregoing contract as such payments become due; and it is further agreed and understood that buyer shall have the right to pay off such indebtedness in full at any time and receive credit therefor on the first maturing installments of principal only due under this contract as hereinabove provided. It being further agreed, however, that in connection with the loan held by Southwestern Life Insurance Company, purchaser shall pay to seller the installments due thereon as same become due, and seller will then immediately remit such payments to South-western Life Insurance Company. 3. It is expressly agreed and understood that the $320,000.00 note described in the foregoing contract shall not be executed until such time as this transaction is consummated, at which time said note shall be credited will all sums and payments *14 theretofore made by seller under the terms of such contract. 4. In the event of failure or refusal by seller herein to consummate this contract, then purchaser shall have the right, at his option, to enforce specific performance of this contract, or to declare the same rescinded and receive back from seller all sums of money heretofore paid under said contract, adjusted by credits and offsets paid by seller to purchaser or credited to purchaser under the terms of said contract. It being the intention of this paragraph to give purchaser, at his sole option, the right to enforce specific performance of said contract or to place the parties in the same position as they were in prior to the execution of said contract. Other than the foregoing four paragraphs, the Contract of which this is an addendum shall remain unchanged. After the execution of the March 5, 1956, agreement and at all times material to this proceeding, Hayter continued to live on and work the Hayter Farm. Petitioner entered into the agreement to purchase the Hayter Farm with the intention of reselling it as soon as he could make a "good profit." Carriger was engaged by petitioner to sell the Farm and was to be *15 paid $25,000 if he did so. On or about March 7, 1956, petitioner paid Hayter $27,000 by a check which contained the following notation on its reverse saide: "This check is given and received as escrow deposit and/or down payment on the W. O. Hayter, Jr. 868 acre farm; and residence at 1117 Legget Drive as per contract of March 5, 1956." The check was deposited to the account of Hayter on March 8, 1956, in the Citizens National Bank, Abilene, Texas. Petitioner had earlier paid Hayter $3,000 by check. Petitioner moved into the residence at 1117 Leggett Drive during the week prior to April 1, 1956. After petitioner and Hayter had entered into the purchase agreement, Hayter was informed by the Citizens National Bank, the holder of a $67,999.98 lien against the Hayter Farm, that the lien would not be released until the total indebtedness was paid off. Furthermore, the Citizens National Bank would not agree to release Hayter even if petitioner assumed the indebtedness. At this time neither petitioner nor Hayter was in a financial position to pay off the bank indebtedness. Sometime around the beginning of April 1956, Carriger contacted one Jack Hughes, the owner of considerable real *16 estate in the Abilene area, and tried to interest him in the purchase of the Hayter Farm. As a result of the negotiations between Hughes and Carriger, an agreement was entered into on April 19, 1956, between petitioner and Hughes whereby Hughes was given a six months option to purchase the Hayter Farm for $434,000. If Hughes did not exercise the option, he was obligated to pay petitioner $8,680. The option price of $434,000 was predicated on the belief that the Hayter Farm contained 868 acres. On October 19, 1956, Hughes exercised the option to purchase the Hayter Farm for $430,655, which was the adjusted consideration after a survey revealed the Farm contained only 861.31 acres instead of 868 acres. As part of the consideration, Hughes agreed to assume Hayter's indebtedness to the Citizens National Bank. The Citizens National Bank agreed to Hughes' assumption of the Hayter indebtedness. On this same day the closing statement pertaining to the sale of the Farm from Hayter to petitioner was prepared; petitioner received a deed to the residence and Hayter Farm from Hayter; and petitioner executed and delivered a deed to the Hayter Farm to Hughes. The aforementioned closing statement *17 shows in part that petitioner was charged interest for 226 days on the unpaid purchase price of $320,000 and that he received a credit for certain farm rents and taxes. Petitioner's expenses of sale on the Hayter Farm amounted to $46,683.55. Opinion The basic issue for decision in this case is whether the petitioner held the Hayter Farm for more than six months so that the profit realized upon its sale would be taxable as long-term capital gain within the meaning of section 1222(3) of the Internal Revenue Code of 1954.[2] The word "held" as it appears in the revenue acts has been equated with "ownership." McFeely v. Commissioner, 296 U.S. 102 (1935); John C. Shaffer, 28 B.T.A. 1294, 1309 (1933); R. O'Brien & Co. v. United States, an unreported case ( D.C., Mass. 1956, 51 A.F.T.R. 1249); Henry A. Kieselbach, 44 B.T.A. 279 (1941), reversed on other grounds 127 F. 2d 359 (C.A. 3, 1942), affd. on other grounds 317 U.S. 399 (1943); Shillinglaw v. Commissioner, 99 F. 2d 87 (C.A. 6, 1938), affirming 32 B.T.A. 1235 (1935), certiorari denied 306 U.S. 635 (1939). *18 Although admittedly legal title to the Hayter Farm did not pass to petitioner until October 19, 1956, in determining the date of ownership for purposes of section 1222(3) we may consider the date on which the benefits and burdens of ownership passed to the petitioner in a closed transaction. Ted F. Merrill, 40 T.C. 66, 74 (1963), on appeal (C.A. 9, Oct. 21, 1963). See also Commissioner v. Union Pac. R. Co., 86 F. 2d 637 (C.A. 2, 1936), affirming 32 B.T.A. 383 (1935). Under the laws of Texas, which is the locus rei sitae, the holder of equitable title to realty possesses the benefits and burdens of ownership. Leeson v. City of Houston, 243 S.W. 485 (Texas 1922); City of Garland v. Wentzel, 294 S.W. 2d 145 (Texas 1956); Rives v. James, 3 S.W. 2d 932 (Texas 1928); Ingram v. Central Bitulithic Co., 51 S.W. 2d 1067 (Texas 1932); Taylor v. Herrin, 127 S.W. 2d 945 (Texas 1939). If petitioner is to prevail, therefore, he must show that as of March 5, 1956, he became the equitable owner of the Hayter Farm. *19 After considering the terms of the March 5, 1956, contract, as amended, and their legal implications under Texas law, we are of the opinion that petitioner did not become the equitable owner of the Hayter Farm on March 5, 1956. An examination of the March 5, 1956, contract, as amended, reveals that Hayter, the seller, had to satisfy several conditions before the "transaction" could be "consummated." First, Hayter had to pay off his $67,999.98 indebtedness to the Citizens National Bank in Abilene; second, Hayter had to furnish petitioner complete abstracts of title showing good and marketable title. [3] If a contract for the sale of real property is in its inception expressly conditional, Texas law provides that the transfer of equitable title does not take place until the conditions have been performed or waived. Northern Texas Realty & Construction Co. v. Lary, 136 S.W. 843 (Texas 1911); Continental Southland Savings & Loan Ass'n v. Jones, 142 S.W. 2d 401 (Texas 1940); Fink v. Hough, 153 S.W. 676 (Texas 1913); 38 Tex. Jur. section 38, at 469. It is apparent from the record that Hayter prior to October 19, 1956, had not satisfied either condition, *20 i.e., he had not liquidated his liability to the bank, and he had not delivered to petitioner abstracts of title showing that he had good and marketable title. Furthermore, there is no evidence in the record that petitioner expressly waived the conditions. Notwithstanding such facts, it is possible for petitioner to have become the equitable owner of the Hayter Farm as of March 5, 1956, if the conduct of the parties shows there was an implied acceptance by petitioner of such title as Hayter was able to convey at the time of the contract. Continental Southland Savings & Loan Ass'n v. Jones, supra. In that case the Texas court was able to find an implied acceptance of title by the vendee when the vendee entered into possession, expended money for improvements, paid nineteen monthly installments of the purchase price, never demanded an abstract of title or title policy as called for by the *21 contract, and never demanded a deed at a time when he was entitled to receive one under the contract. In support of his claim that he was the equitable owner of the Farm, petitioner in this case refers to the fact that he took possession of the Hayter Farm as of March 5, 1956, and to the fact that the October 19, 1956, closing statement allocated certain rental income and expense items to him as of March 5, 1956. To begin with, the record clearly establishes that petitioner never had physical possession of the Farm and fails to establish that petitioner as of March 5, 1956, had constructive possession. [4] The March 5, 1956, agreement, as amended, which is the purported source of petitioner's possessive right, merely provides that petitioner "agrees to lease" the Farm to Hayter as of the date of the contract at an annual rental of $2500, payable in advance. Since the leasing provision was contained in and obviously subject to the sales agreement, an agreement which we have already found was conditional in nature, its status as a proviso of independent significance is considerably diminished if not totally invalidated. Furthermore, prior to October 19, 1956, the date on which the *22 sale was consummated, there is no evidence of any act or event which would be consistent with and corroborate petitioner's alleged constructive possession. For example, no formal lease was executed by the parties nor was evidence offered to show that Hayter paid in advance, as required by the leasing provision, the annual rent of $2500. The petitioner, however, points to the fact that in the closing statement he received a credit for "Rents From Farm" of $1548.10. From the record we are not entirely convinced that this credit represented rent from Hayter to petitioner solely for the use of the Farm rather than rent attributable to pre-existing leases between Hayter and third persons. [5] In any event, we do not believe that such a fact, considering the conditional nature of the entire transaction, demonstrates that petitioner actually had constructive possession of the farm as of March 5, 1956. *23 Similarly, the fact that a pro rata allocation of taxes, etc., pursuant to the contract of March 5, 1956, was effected at the consummation of the transaction does not, we believe, tend to show that petitioner impliedly accepted Hayter's title at an earlier date. Petitioner having failed to bring his case within the ambit of Continental Southland Savings & Loan Ass'n v. Jones, supra, there is no basis for applying the doctrine of implied acceptance. Leeson v. City of Houston, supra, relied on by petitioner, did not involve the question of implied acceptance and is, therefore, distinguishable for this and other reasons. *
Since petitioner did not possess legal or equitable title to the Farm for a period of at least six months prior to the sale, we must sustain respondent's determination that the gain realized by petitioner on the sale of the Hayter Farm is taxable as short-term capital gain. Our holding with respect to this issue eliminates the need for considering respondent's alternative position. Decision will be entered for the respondent. Footnotes
1. The parties have stipulated that if the Court determines that petitioners' holding period of the Hayter Farm was in excess of six months then, and only then, petitioners are entitled to a reasonable allowance for depreciation from March 7, 1956, to October 19, 1956, of $1,099.65 on farm improvements. In addition, the parties have stipulated that if the Court determines that petitioners' holding period of the Hayter Farm was in excess of six months then, and only then, petitioners are entitled to an interest deduction of $9,906.51.↩
2. SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES. For purposes of this subtitle - (3) Long-term capital gain. - The term "longterm capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, * * *.↩
3. Under Texas law, good and marketable title means a title which is free of encumbrances. Vesalka v. Forres, 283 S.W. 303 (Texas 1926); Alling v. Vander Stucken, 194 S.W. 443 (Texas 1917); O'Meara v. Saunders, 199 S.W. 2d 689↩ (Texas 1946).
4. It is to be recalled that the act of possession was only one of the criteria considered by the court in Continental Southland Savings & Loan Ass'n v. Jones, 142 S.W. 2d 401↩ (Texas 1940), in making its determination that the vendee had impliedly accepted the vendor's title. 5. See paragraph 8 of the March 5, 1956, agreement wherein it is provided that, "Taxes for the current year, current rents, insurance, interest (if any), and delay rentals on oil and/or gas leases are to be pro-rated as of the date of this contract." [Italies supplied.] It is to be noted that this provision precedes and appears to be unrelated to the provisions in paragraph 9 regarding the leasing of the Farm to Hayter.↩
*. The two preceding paragraphs were substituted by Tax Court order of 1/30/64. - CCH.↩