HALL, Chief Justice.
 

 E. M. Carter sold Thomas M. and T. R. Galt all of section No. 3 in Jo well’s subdivision of Castro county for a total consideration of $20,442.10, to be paid as follows: The assumption by the Gaits of a note for $4,000, payable to the order of the Southwestern Dife Insurance Company of Dallas, and by the execution and delivery to Carter of the second party’s promissory note in the sum of $16,442.10, due on or before twelve years from date, with interest at 7 per cent, per annum. The land was sold under what is denominated a “crop-payment plan.” It appears that a deed was executed by Carter, which, together with the contract, was deposited in escrow in the First National Bank of Plain-view. This deed and note were not introduced in evidence. Only the following portions of the contract of sale appear in the record:
 

 “The State of Texas: The County of Castro:
 

 “That whereas, E. M. Carter, party of the first part of the County of Hale, State of Texas, has this day sold to Thomas M.- Galt and T. R. Galt of the County of Hale, and State of Texas, parties of the second part, all of Section (3) three J. T. Jowells subdivision, Castro County, Texas, containing 584.06 acres of land for a total consideration of (20,442.10) twenty thousand four hundred and forty-two and 10/100 dollars, to be paid as follows: By the assumption by second party of one note for the sum of $4,,000.00 payable to the order of the Southwestern Dife Insurance Company, of Dallas, Texas, and due September 1, 1932, together with interest at the rate of seven per cent from this date, said note being a lien on the land above described, and, by the execution and delivery by the second parties to first party of their one promissory note for the sum of ($16,442.10) Sixteen thousand four hundred forty-two and 10/100 dollars of even date herewith due on or before twelve years from date bearing interest at the rate of seven per cent per annum from this -date.
 

 “It is expressly agreed and understood that the said second parties shall and will make annual payments on the note payable to E. M. Carter as follows: They will deliver to the said Carter one-half of all crops grown on the above described land for the year 1929 and all succeeding years until the above note and interest thereon is fully paid,' the grain at the nearest elevator and the other products at the nearest market, as soon as same is ready to market, free of expense, and the then market price of same shall be credited on said note. Any balance left unpaid on note given to first party at the end of twelve years from this date to become due and payable in cash at that time. * * * :
 

 “ * * * The said second parties agree to pay all taxes on above . described land for the year 1929 and all succeeding years, and, this contract is not made transferable by the second parties without the written consent of the said E. M. Carter. The said E. M. Carter is to furnish abstract covering thé aboye described land, and, this along with the deed from said E. M. Carter conveying the above land to said second parties shall be deposited in the First National Bank, Plainview, Tex
 
 *617
 
 as, to be held in escrow and the said second parties shall execute the above described note for $16,442.10 same being a lien on above described land and deliver the same to said E. M. Carter. It is also agreed when one-half of the purchase price for said land with all interest thereon has been paid, the First National Bank, Plainview, Texas, is hereby authorized to deliver said deed and abstract to second parties.
 
 * * * ”
 

 The' plaintiffs alleged that during the months of June and July, 1931, T. M. and T. R. Galt delivered to the defendant Elevator Company, a corporation, 7,226 bushels of wheat of the value of $1,860.23, and that one-half thereof belonged to the plaintiffs. That while said wheat was in the possession of the defendant and before defendant paid for same, it was notified of plaintiffs’ ownership of one-half thereof, and in due time plaintiffs called for said wheat and demanded payment therefor. That defendant refused to deliver the wheat or to pay plaintiffs for same and converted it to their own use, to plaintiffs’ damage in the sum of $930.11.
 

 The Elevator Company answered by general demurrer, general denial, and a plea that ‘ if the plaintiffs were the owners of one-half of the wheat, nevertheless T. R. Gait was the owner and holder of the legal title and the possession of all of the wheat at the time of the delivery thereof to the elevator and its purchase by said defendant. That all of said wheat was raised by T. R. Galt on his farm in Castro county and was harvested, marketed, and delivered to defendant elevator by him, and that defendant had paid Galt the full sum of $1,860 therefor. That in making such payments the defendant was an innocent and bona fide purchaser, believing that Galt was the owner of all the wheat. That defendant had no notice, either actual or constructive, of any claim plaintiffs had to said wheat. That if plaintiffs owned any interest in the wheat it was some kind of a secret equity and defendant -was without notice thereof at the time it paid Galt the purchase price. That it was therefore a bona fide purchaser for value without notice.
 

 The case was submitted to a jury upon special issues, in response to which the jury found: (1) That E. M. Carter, Jr., notified E. C. Caudle, the defendant’s bookkeeper, prior to the time he paid Galt; and (2) that . the plaintiffs owned the wheat in question.
 

 Based upon this verdict the court rendered judgment in favor of the Carters against the. Dimmitt Elevator Company for the sum of $930.11, with interest from September 1, 1931, at 6 per cent, and further decreed that defendant pay all costs.
 

 Because the record shows that the deed, together with the contract, was placed in escrow, the legal title to the land did not pass to the Gaits. It was not shown that the Gaits had paid the taxes nor any part of the $4,000 note which they assumed, due the Southwestern Life Insurance Company; nor does the record show that they had paid anything upon the note for $16,442.10, which had been executed and delivered by them to E. H; Carter. They were therefore not entitled to the possession of the deed. We construe the contract to be an executory contract of sale, and the result of the transaction is that the legal title to the land remained in Carter. Rives v. James (Tex. Civ. App.) 3 S.W.(2d) 932; Taylor v. Turner (Tex. Civ. App.) 230 S. W. 1031; R. B. Godley Lumber Co. v. C. C. Slaughter Co. (Tex. Civ. App.) 202 S. W. 801. The legal title will remain in Carter until all the purchase money has been paid. Payne v. Beaumont (Tex. Civ. App.) 245 S. W. 94.
 

 Because the Gaits had assumed to-pay the taxes, to discharge the prior vendor’s lien note for $4,000, and had executed their, note for the balance of the consideration, which had been delivered to Carter, and had gone into possession under the executory contract of sale, they had equitable title to the property. Alworth et al. v. Ellison (Tex. Civ. App.) 27 S.W.(2d) 639; Neal v. Pickett (Tex. Com. App.) 280 S. W. 748.
 

 -As held in Rives v. James, supra, a vendee of land under an executory contract, who goes into possession, is entitled to the crops grown on the land which are not reserved in the contract of sale under the terms of which he obtained possession. In the absence of the contract of sale, all of the crops would be the property of the Gaits. ‘ The contract, however, expressly stipulates that one-half of all crops raised by the Gaits on the premises should be applied as payments annually upon the note given for the purchase money. The remaining one-half, of course, belonged to the Gaits. As we construe the contract, the Gaits were simply trustees empowered to plant, harvest, and store the wheat in the nearest elevator in the name of the Carters. Since the only right and title which the Carters had or 'could have to the wheat arises out of the written contract, it follows that unless the Elevator Company had notice of the contract it became, under the facts, the bona fide purchaser of the wheat from .the Gaits. It .was £hown that
 
 *618
 
 the only notice given
 
 by
 
 plaintiffs to any one connected with tlie Elevator Company that the plaintiffs claimed an interest in the wheat was the statement made by E. M. Carter, Jr., to one Caudle before the wheat had all been delivered and paid for. It appears that Caudle was the bookkeeper for the Elevator Company, and it was not shown that it was within the scope of his authority to buy or pay for wheat, and as a matter of law notice to him of the claim of the plaintiffs was not notice to the Elevator Company.
 

 The general rule is that crops raised upon land are a part of the realty and, in the absence of an agreement to the contrary, are the property of the owner of the land. Roberts v. Armstrong (Tex. Com. App.) 231 S. W.
 
 371; 13 Tex.
 
 Jur. 19, § 17; Ray v. Foutch (Tex. Civ. App.) 50 S.W.(2d) 380.
 

 Under the provisions of R. S. art. 6645, to the effect that every writing respecting the title of personal property -which by law ought to be recorded should be recorded in the clerk’s office of the county in which the property is situated, it was necessary, in order to bind the Elevator Company, that it should have actual notice of the existence of the contract or constructive notice arising from the fact that it had been recorded as required by this statute. While the jury found that E. M. Carter, Jr., notified defendant’s bookkeeper, prior to the time defendant paid Galt for the wheat, that the Carters were claiming an interest therein, this is not sufficient notice and the judgment based upon ihat finding is error. While in a sense plaintiffs were entitled to one-half of the wheat, they could not recover either the wheat or its value without showing notice actual or constructive.
 

 In view of another trial we will dispose 'of the several contentions urged in appellant’s brief.
 

 Appellant requested the court to submit this special issue to the jury: “Did T. R. Galt deliver the wheat in question to the plaintiffs E. M. Carter, Sr., and E. M. Carter, Jr.?” The refusal of the court to submit the issue is not error. A delivery to the elevator of the wheat in question as belonging to the Carters would have been sufficient compliance with the contract. It did not require actual personal delivery to either of the appellees.
 

 The general rule is that the question of ownership of property is one of law arising from the facts to be shown by the testimony. While E. M. Carter was permitted
 
 to
 
 testify that his father owned the wheat, upon cross-examination he stated that his opinion was based upon the contract made with the Gaits.
 

 The general manager of the elevator, Boothe, should have been permitted to testify as to the authority of the defendant’s bookkeeper, Caudle.
 

 E. M. Carter should not have been permitted to testify, over defendant’s objection, that the wheat was delivered under the terms of the contract.
 

 Because the case seems to have been tried upon the mistaken theory that because the wheat was the property of the Carters, the Gaits could convey no title by their sale of it to the defendant company, and this without regard to the question of notice, we have concluded that the proper disposition to make of the case is to reverse the judgment and remand the cause for another trial.
 

 Reversed and remanded.