**CITY OF GARLAND, Appellant,**

**v.**

**Robert L. WENTZEL, Appellee.**

**No. 15144.**

Court of Civil Appeals of Texas.

Dallas.

July 20, 1956.

Rehearing Denied Sept. 28, 1956.

Andrew J. Thuss, Dallas, William L. Taylor and Wyatt W. Lipscomb, Garland, for appellant.

Palmer & Rochelle, Philip I. Palmer and J. Edwin Fleming, Dallas, for appellee.

YOUNG, Justice.

·The suit of plaintiff Wentzel was for recovery of ·damages accruing.to him by reason of depreciation of market.value of his 66-acre farm· situated on Rowlett Creek, Dallas County, allegedly caused by offensive, odors and pollution of the surrounding at-,

mosphere; and emanating from a sewage disposal plant owned and operated by defendant City. Part of the property in question (37 acres) had been acquired by plaintiff from the Veterans Land Board, Art. 5421m, Vernon's Ann.Civ.St., and defendant first urged by plea in abatement the lack of necessary parties, in that this statutory entity was not joined. The plea was overruled and cause submitted to the jury on special issues; and judgment of the court on jury answers was for $10,305, with timely appeal by the City.

A new sewage disposal plant had been placed in operation in vicinity of Rowlett Creek by the City of Garland in May 1953. In the ensuing lawsuit the issues raised by the evidence and pleading of the respective parties are sufficiently reflected by the following jury answers: In effect, that (Issue 1) the permanent normal operation by defendant City of said disposal plant on and after May 25, 1953 had impregnated the atmosphere of plaintiff's property with offensive odors to such extent as to substantially impair the enjoyment of said premises, resulting in permanent damage to the property. That the reasonable market value in Dallas County of the land in question immediately before operation of the new sewage plant was $22,000; and immediately after the plant had reached its permanent and normal operation was $13,000; that (Issue 5) the discharge of effluent from the defendant's old sewage plant into Mill Branch and Rowlett Creek at any time prior to November 19, 1951, had not impregnated plaintiff's property with offensive odors. Said defensive issue (No. 5) sought a jury finding of whether the atmosphere around plaintiff's property had been impregnated with odors from another source, to wit, *Mill Branch,* which had existed as a source of odors prior to plaintiff's purchase and possession, in which event the right to damages would have existed in plaintiff's predecessor in title; there being no claim that upon Wentzel's acquisition, said prior right of action had accrued to him.

In summary, the points of error were that: (1) Under Art. 5421m, the Veterans Land Board, a statutory entity, as vendor, had retained both legal and equitable title to 37.53 acres of plaintiff's land and was a necessary party; in that defendant would be subject to double liability upon the acreage reverting to the Board for breach of contract after Wentzel had collected for these damages. In other words, that a judgment in this suit would not constitute res adjudicata as against the fee simple and equitable title owner—the Land Board. The other points relate to jury misconduct; in substance (2) that the jury, in deliberating upon Issue 1 where the term "impregnate" was used, did not consider in the same connection the definition of said term as given by the court; and (3) evidence of the jurors, taken on motion for new trial, shows undisputedly that they relied on their own definition and understanding of the word "impregnate," where used in Issue 1, and not the definition of that term as given by the court and as applied in Issue No. 5; thereby employing a double standard of measure in making affirmative answers to these issues.

Appellee's "Contract of Sale and Purchase" from the Land Board (so denominated by the parties), was executed July 7, 1950, he and family at once moving onto the property and since that time remaining in actual possession. Pursuant to Art. 5421m, the instrument provides that the Board shall sell and appellee shall buy the 37.53 acres of land involved. Other material provisions thereof should be stated: That the land may be sold or transferred by purchaser after three years from purchase date; that appellee is to maintain reasonable insurance to cover any loss incurred on any improvements thereon; that he shall furnish proof to the Board each year as to current payment of taxes; that if appellee shall sell any timber, gravel, rock, or soil from the land, one-half of the proceeds, or as much as necessary, shall be paid to the Board to apply against any unpaid principal

of the purchase money note; that appellee shall have the right to execute mineral leases on the property, subject to approval of Board Chairman, provided that one-half of all bonus and rentals received (not royalties), or as much as necessary, shall be paid to Commissioner of the General Land Office for application to any unpaid principal; and on payment of entire purchase money indebtedness the seller would execute a deed to such purchaser, which deed shall inure to the benefit of the legal holder of said land. Under terms of the contract, thus generally outlined, appellee has continued in his possession, growing crops, using pasturage, making valuable improvements, and treating the land as his own, subject to said contractual obligations.

■ Appellant contends that Wentzel, having paid only a small portion of principal due, has merely an equitable right in the property in contrast to the legal and equitable title which remained in the Land Board under its authority to cancel the contract pursuant to Art. 5421m, sec. 19, which provides: "In the event that any portion of the interest, or principal on any sale should not be paid when due, the contract of sale and purchase shall be subject to forfeiture by the Board * * *." and such forfeiture shall be effective when the Board shall have met and passed a resolution directing the Chairman of the Board to endorse upon the wrapper containing the papers of said sale, or upon the purchase contract filed in the Land Office, the word 'forfeited,' * * *. Upon forfeiture full title to the land, including both the surface and mineral estates, shall revest in the Board * *. *." It is argued that the Board, as owner of the legal and equitable title at time of injury, would have the same cause of action for damage to its property and hence a necessary party; the instant judgment in favor of Wentzel affording no protection against such claim. Appellant's principal cases, Johnson v. Wood, 138 Tex. 106, 157 S.W.2d 146, and Texan Development Co. v. Hodges, Tex.Civ.App., 237 S.W.2d 436, have to do with different situations of fact. For while the Land Board undoubtedly retained legal title to appellee's land until passing of deed, under this contract of sale the equitable title passed to the vendee; the rights retained by the Land Board being merely those necessary to secure it in payment of the balance of indebtedness due. It is well settled that the purchaser under an executory contract of sale acquires equitable title to the realty; having exclusive right to sue for damages to the freehold. Thus in Leeson v. City of Houston, Tex.Com.App., 243 S.W. 485, 488, the Court stated: "By the great weight of authority it is now held that, although the legal title does not pass to the vendee under a contract of sale until actual delivery of a deed to the property still the vendee under such contract of purchase, especially where he goes into possession of the property, is invested with the equitable title from the date of the contract, or in any event, from the date he takes possession, and any increment, advantage, or enhancement to the property inures to his benefit, and any detriment, depreciation, or loss thereto without fault of either party must be borne by him." See also Rives v. James, Tex.Civ.App., 3 S.W.2d 932; Ingram v. Central Bitulithic Co., Tex.Civ.App., 51 S.W.2d 1067; Dimmitt Elevator Co. v. Carter, Tex.Civ.App., 70 S.W.2d 615. Additionally, the Supreme Court, in Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561, has held that the right of action for all damages resulting from a permanent nuisance (such as here) accrues to the owner of the land at time the thing causing the injury commences to affect it; and to be in accord with above cited decisions, an "owner of the land" would connote ownership of the equitable title, since he is the one who must bear the loss or depreciation.

Nor do we find any evidence of jury misconduct as charged. Facts material to these points will be stated briefly. Initially, the court's charge carried no definition of the term "impregnated," as used in plaintiff's Issue No. 1 and defendant's Issue No. 5. The jury began their deliberations about

1:00 o'clock in the afternoon and in due course gave affirmative answer to Issues 1 and 2. In consideration of Issue No. 5 a question arose concerning "impregnate" and its meaning; juror Berle, in the electrical supply business, giving an explanation of the way telephone poles are treated with creosote to prevent decay and termites. The jury, however, requested a definition of the court, receiving without objection the following instruction: "Ladies and Gentlemen of the Jury: You are instructed that the word 'impregnate' as used in this charge, means to be caused to be filled or imbued, mixed or furnished with something." Shortly thereafter the jury completed their labors; and, according to Foreman Wyatt, the entire charge and each issue was read back to the jurors, each being polled as to correctness of his or her answer. Their verdict was then returned into court. At that time no question was raised as to meaning of the word "impregnate" in Issue No. 1.

It is appellant's position that since both Issues 1 and 5 incorporated the word "impregnate" or "impregnated" and the jury, having answered Issue 1 *before* receiving the court's definition, and No. 5 *thereafter,* that they employed a double standard in answering these issues. As observed by appellee, the conclusion does not follow. There is nothing to indicate that the definition submitted by the court was any different from that employed by the jury in answering Issue 1. The presumption is to the contrary; in short, that the court's conception of the word literally coincided with their own. For once the court's definition was received, Issue 5 was immediately answered and upon a review of all issues and answers, the jury became likewise satisfied that the initial issue had been correctly disposed of. We may here interpolate that the word in question has but one concept or meaning—in this instance made use of by the court in identical language of the dictionary. See Webster's New International. There was then no possibility of application by the jury of a

double standard in their consideration of Issues 1 and 5 with result of "an unfair and excessive" verdict.

Judgment of the trial court is in all things affirmed.