The CADLE COMPANY, Appellant,

v.

Peter Marshall HARVEY, Appellee.

No. 2–99–337–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 18, 2001.

Randall K. Lindley, Bell, Nunnally & Martin, L.L.P., Dallas, for appellant.

Perry J. Cockerell, Randall K. Price, Cantey & Hanger, L.L.P., Fort Worth, for appellee.

Before DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

DAUPHINOT, Justice.

### INTRODUCTION

In this case, we are asked to determine whether the trial court properly applied Texas homestead exemption laws. The Cadle Company filed suit in 1997 against Peter Marshall Harvey seeking a declaration that its judgment lien is valid against the title of property owned by Harvey and for foreclosure of the lien and attorney's fees. Harvey counterclaimed for declaratory relief seeking cancellation of Cadle's judgment lien on his property on the basis of homestead exemption or, alternatively, equitable subrogation. Harvey also sought recovery of attorney's fees. The trial court entered summary judgment against Cadle, declared its judgment lien void as to the property and, after a bench trial, awarded Harvey attorney's fees. Cadle raises two issues on appeal complaining of the trial court's summary judgment and the award of attorney's fees. Because we conclude that Cadle's judgment lien never attached to the property and the trial court did not err in awarding attorney's fees, we affirm the trial court's judgment.

### BACKGROUND FACTS

In 1981, Michael Kelly purchased a home from Harvey. This residential property is at the center of the dispute in this case.

In October 1988, a judgment was obtained against Kelly in a matter unrelated to the property, which was properly abstracted. Cadle Company is the current owner of the judgment.

Although Kelly moved from the property in December 1988 and leased the home to another individual until 1990, he considered the property his residential homestead since the time he purchased the property. In February 1991, he filed a Designation of Homestead Affidavit stating that he considered the property his homestead even though he was temporarily renting the property to another individual.

In April 1991, Kelly leased the property to Harvey along with an option to purchase the property. The lease term commenced on May 1, 1991 and ended on October 2, 1991. Under the terms of the lease and purchase option agreement, Harvey was to pay $10,000 as consideration for the purchase option and $3,000 weekly rental. At the same time they executed this agreement, Kelly and Harvey also executed an earnest money contract for the sale of the property to Harvey for $76,354.18. Both agreements provided that all of Harvey's payments made under the lease agreement would be credited towards the purchase price of the property.

Harvey took possession of the property at the beginning of the lease term and made all payments due under the lease. Kelly later transferred legal title to the property to Harvey in September 1996.

### HOMESTEAD EXEMPTION

In its first issue, Cadle contends the trial court erred in granting Harvey's motion for summary judgment and declaring its judgment lien void as against Harvey's property because it improperly applied Texas homestead exemption law. Cadle

claims the property lost its homestead status before Harvey acquired the property in 1996, that Harvey had no interest in the property sufficient to prevent attachment of its judgment lien, and, therefore, Harvey took the property subject to the lien.

## Summary Judgment Standard

The standards for reviewing a motion for summary judgment are well-established. The movant has the burden of showing that there is no genuine material fact issue and that it is entitled to judgment as a matter of law.[1] When a defendant moves for summary judgment based on an affirmative defense, the defendant bears the burden of proving each essential element of that defense.[2] If the motion and summary judgment proof facially establishes the movant's right to judgment as a matter of law, then the burden shifts to the nonmovant to establish a fact issue precluding summary judgment or to show that the defendant's legal position is unsound.[3] When reviewing a motion for summary judgment, the court takes the non-movant's evidence as true and indulges every reasonable inference and resolves all doubts in favor of the non-movant.[4]

## Texas Homestead Law

The Texas Constitution specifically protects homesteads from forced sales by creditors, except for those liens securing one of the debts specifically listed in the Texas Constitution.[5] Thus, it is clear in Texas that general creditors who have reduced their debts to judgment do not obtain a judgment lien against property claimed, occupied, and used by the debtor as a homestead.[6] Cadle is a general creditor in that its judgment lien did not arise out of any of the debts listed in the Constitution, but arose from a matter unrelated to the property.

A duly abstracted judgment never fixes a lien on the homestead so long as it remains a homestead.[7] A judgment debtor may sell it and pass title free of any judgment lien, and the purchaser may assert that title against the judgment creditor.[8] A judgment lien will attach to the judgment debtor's interest, however, if he abandons the property as his homestead before he sells it.[9]

## Kelly's Homestead Rights

Cadle admits Kelly had a homestead interest in the property until 1995. Thus, there is no dispute that Kelly had a

1. TEX.R.CIV.P. 166a(c); *Calvillo v. Gonzalez,* 922 S.W.2d 928, 929 (Tex.1996); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

2. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

3. *City of Houston,* 589 S.W.2d at 678; *St. Paul Ins. Co. v. Mefford,* 994 S.W.2d 715, 718 (Tex.Civ.App.—Dallas 1999, pet. denied) (op. on reh'g).

4. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

5. TEX. CONST. art. XVI, § 50; *Inwood N. Homeowners' Ass'n v.. Harris,* 736 S.W.2d 632, 634 (Tex.1987).

6. *Gill v. Quinn,* 613 S.W.2d 324, 325 (Tex.Civ. App.—Eastland 1981, no writ).

7. *Id.* at 325.

8. *Id.; Englander Co. v. Kennedy,* 424 S.W.2d 305, 309 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e.,* 428 S.W.2d 806 (Tex.1968).

9. *Gill,* 613 S.W.2d at 325; *see Sanchez v. Telles,* 960 S.W.2d 762, 770 (Tex.Civ.App.—El Paso 1997, pet. denied) (stating that a "subsequent purchaser of homestead property, may assert the prior persons homestead protection against a prior lienholder so long as there is no gap between the time of homestead alienation and recordation of his title").

homestead interest in the property at the time he and Harvey entered into the lease with purchase option and earnest money contract in 1991. Cadle's argument is that Kelly abandoned the property as his homestead before Harvey actually purchased the property, by receiving legal title, in 1996. Because Kelly abandoned his homestead interest before selling the property, Cadle argues that Harvey took the property subject to its lien.

■ Cadle is correct that a judgment creditor's lien may attach to property when there is a gap between the abandonment of the homestead interest and the sale of the property to another.[10] However, Cadle's argument incorrectly concludes that this gap existed and misconstrues Harvey's actual interest in the property.

### Harvey's Property Interest

■ It is undisputed that Harvey's interest in the property rests upon the lease with purchase option agreement and the earnest money contract. Two separate contracts executed at the same time, for the same purpose, and in the course of the same transaction are considered one instrument and are read and construed together.[11] Here, both agreements were executed at the same time and in the course of the same transaction for the purpose of transferring an interest in the property to Harvey. Construing the two contracts together, it is clear that the transaction between Kelly and Harvey was for the sale of the property to Harvey.

■ "A contract to sell real property is an agreement for a sale in the future, either absolutely or on the happening of some contingency or the performance of some condition."[12] The test for determining whether a real estate contract is an option contract or a contract of sale is whether the contract imposes a mandatory obligation upon the seller to accept a sum stipulated as liquidated damages in lieu of the purchaser's further liability. In the absence of such a provision, it is a contract of sale.[13] Typically, contracts for sale provide that upon making a down payment, the buyer is entitled to immediate possession of the property, with the remaining purchase price paid in installments over a period of time. Legal title, however, remains in the seller until the purchase price is paid in full.[14]

The contracts in this case, construed together, are a contract for sale of the property to Harvey. In reaching this conclusion, it is significant to note what the agreements do not contain. First, there was no earnest money given under the earnest money contract. Under this provision of the contract, the parties typed in the words "Not Applicable." Additionally, no security deposit was required under the lease, the parties having crossed out this entire provision. Finally, there is no mandatory obligation upon Kelly under either of these agreements to accept a stated sum

10. *Gill,* 613 S.W.2d at 326.

11. *Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex. 1981).

12. *Seelbach v. Clubb,* 7 S.W.3d 749, 756 (Tex. Civ.App.—Texarkana 1999, pet. denied).

13. *Tabor v. Ragle,* 526 S.W.2d 670, 675–76 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.).

14. *Graves v. Diehl,* 958 S.W.2d 468, 470–71 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *cf. Seelbach,* 7 S.W.3d at 756 (concluding that earnest money contract was an option contract and not a contract for sale because the seller's only contractual remedy in event of purchaser's default was retention of earnest money and purchaser had no right to occupy the property until the stated time for delivery of possession, which was at closing).

as liquidated damages, thereby relieving Harvey from paying the purchase price.

The agreements do show that Harvey agreed to pay cash for the property through his $10,000 purchase option payment and his weekly lease payments beginning May 1, 1991 and ending October 2, 1991. The lease gave him immediate possession of the property and provided a method of paying the agreed purchase price under the earnest money contract. Additionally, both the lease and earnest money contract imposed upon Harvey all the burdens of ownership as of May 1, 1991, the date of possession, not the date of closing. At the time he took possession, Harvey assumed all responsibility for utilities, taxes, insurance, and homeowner fee assessments on the property. He also assumed full responsibility for all repairs in excess of $500 and all other damage or destruction of the property, while continuing his payment obligations under the agreements. Once he made full payment of the purchase price, Harvey both expected and was entitled, under the terms of the earnest money contract, to receive a deed and legal title to the property. It is undisputed that Harvey made all payments due under the lease, which payments were credited against the purchase price of the property under the earnest money contract.

■■■■ It is well-settled that a purchaser under a contract of sale for real property acquires an equitable interest in the property.[15] It is equally well-settled that in considering a creditor's judgment lien, the equitable rights of third persons will be protected against the legal lien, with the legal lien being limited to the actual interest that the judgment debtor has in the estate.[16] A purchaser under an executory contract to convey real property who goes into possession of the property, obtaining all rights and obligations of ownership in the property, is vested with equitable title from the date of the contract, or in any event, from the date he takes possession.[17] An equitable title is superior to legal title to the property and may be asserted as a complete defense against the lien of a debtor's judgment creditor.[18]

Here, although Kelly retained legal title to the property until Harvey fully performed under the contract, Kelly held that

15. *Johnson v. Wood*, 138 Tex. 106, 157 S.W.2d 146, 148 (Tex.1941); *Leeson v. City of Houston*, 243 S.W. 485, 489–90 (Tex.Comm'n App.1922, judgm't adopted); *Gaona v. Gonzales*, 997 S.W.2d 784, 786–87 (Tex.App.—Austin 1999, no pet.); *Graves*, 958 S.W.2d at 472; *City of Garland v. Wentzel*, 294 S.W.2d 145, 146–47 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.); *Lusk v. Parmer*, 114 S.W.2d 677, 682 (Tex.Civ.App.—Amarillo 1938, writ dism'd).

16. *Gaona*, 997 S.W.2d at 787; *Lusk*, 114 S.W.2d at 682; *see also Park Cent. Bank v. JHJ Invs. Co.*, 835 S.W.2d 813, 815 (Tex. App.—Fort Worth 1992, no writ).

17. *Leeson*, 243 S.W. at 488–90; *see also City of Austin v. Capitol Livestock Auction Co.*, 453 S.W.2d 461, 464 (Tex.1970); *Wentzel*, 294 S.W.2d at 147; *cf. Fant v. Howell*, 547 S.W.2d 261, 264–65 (Tex.1977) (finding rule stated in *Leeson* inapplicable where purchaser under contract of sale never went into possession of property); *Johnson*, 157 S.W.2d at 148 (concluding that purchaser not in possession of property acquired an equitable right in the property until he paid the full purchase price at which time his right ripened into an equitable title).

18. *Johnson*, 157 S.W.2d at 148; *Park Cent. Bank*, 835 S.W.2d at 814; *cf. Gaona*, 997 S.W.2d at 787 (concluding that a judgment lien arising after the purchaser had obtained equitable rights in the debtor's property, but before those rights had ripened into equitable title, could recover from the purchaser the amount of purchase price remaining unpaid when the lien arose and, upon payment, would be required to convey legal title to the purchaser).

title subject to Harvey's equitable rights. Under the facts presented, and the authorities cited, we conclude that Harvey held equitable title to the property when he took possession on May 1, 1991, even though he had not yet paid the full purchase price for the property.

We note there is no conflict with our conclusion in this case and our opinion in *Park Central Bank,* which is based upon a different set of facts. In that case, there was no disputed issue regarding when the equitable interest arose or any evidence JHJ ever went into possession of the property. The only issue addressed was whether JHJ's equitable title, acquired by its completion of payments specified in the seller's lien and payment of taxes and expenses for the property, could be asserted against a judgment lien creditor.[19]

Here, just as in *Park Central Bank,* Harvey's equitable title was sufficient, in itself, to protect the property against Cadle's judgment lien.[20] Additionally, because Harvey obtained equitable title to the property before the date Cadle claims Kelly abandoned his homestead interest, there was no gap within which Cadle's judgment could have attached. Accordingly, Harvey took the property free and clear of Cadle's judgment lien.[21]

Cadle makes several arguments, all of which suggest Harvey could not obtain any superior interest in the property, or that fact issues exist regarding his interest, because he failed to comply with the terms of the agreements. Specifically, Cadle claims that Harvey never exercised the purchase option per the terms of the contract, that fact issues exist as to whether he paid all amounts due under the contracts, and that the sale of the property did not occur pursuant to the terms of the contracts, but rather occurred five years after the lease agreement expired.

Cadle is not a party to these contracts. The general rule, which applies in this case, is that only the parties to a contract have the right to complain about any noncompliance with the contract. If they are satisfied with the contract's disposition, a third party has no right to insist there has been any non-compliance.[22]

Here, both Kelly and Harvey considered the contracts fully performed. Cadle has no right to insist otherwise. The fact that Harvey did not acquire legal title to the property until 1996 is of no consequence to our disposition. Harvey held equitable title in the property, before receiving legal title, and that interest was superior to Cadle's judgment lien.[23]

### Conclusion: Cadle's Judgment Lien Did Not Attach To Harvey's Property

There being no dispute that Kelly had a homestead interest in the property at the time Harvey acquired equitable title to the property, there was no gap within which Cadle's judgment lien could attach. Under these facts, Harvey took the property free and clear of Cadle's judgment lien.[24]

We hold the trial court properly granted Harvey's motion for summary judgment and declared Cadle's judgment lien void as against Harvey's property. We overrule Cadle's first issue.

---

19. *Park Cent. Bank,* 835 S.W.2d at 814–15.

20. *Id.* at 814; *see also Gaona,* 997 S.W.2d at 786–87; *Lusk,* 114 S.W.2d at 682.

21. *See Gill,* 613 S.W.2d at 325.

22. *Bruner v. Exxon Co.,* 752 S.W.2d 679, 682 (Tex.App.—Dallas 1988, writ denied).

23. *See Gaona,* 997 S.W.2d at 786.

24. *See Gill,* 613 S.W.2d at 325.

## ATTORNEY'S FEES

█ In its remaining issue, Cadle contends the trial court erred in awarding Harvey attorney's fees on his counterclaim for declaratory judgment. Cadle argues that Harvey's use of the declaratory judgments statute was an improper vehicle for obtaining his attorney's fees because his counterclaim sought resolution of issues already before the trial court.

█ The trial court's granting or denial of attorney's fees will not be reversed on appeal absent a clear showing of an abuse of discretion. The trial court abuses its discretion if its ruling that attorney's fees were recoverable was arbitrary or unreasonable.[25]

█ The Declaratory Judgments Act specifically provides that, in any proceeding under the Act, a trial court may award costs and reasonable and necessary attorney's fees as are equitable and just.[26] This court has consistently concluded that, under this provision, either party may plead for and obtain attorney's fees once the Act is properly invoked.[27] An award of attorney's fees under the statute is not limited to the plaintiff or party affirmatively seeking declaratory relief. A defendant who requests an award of attorney's fees in answering a declaratory judgment suit may be entitled to fees as the prevailing party in the suit.[28]

Cadle originally brought suit for declaratory judgment in an effort to have its judgment lien declared valid as against Harvey's property and for foreclosure of the lien. Harvey successfully defended against Cadle's declaratory judgment action. Under these facts, the trial court could properly award Harvey attorney's fees, provided the award was "equitable and just." Cadle makes no complaint that the attorney's fees awarded were not equitable or just. Accordingly, we hold the trial court did not abuse its discretion in awarding Harvey attorney's fees. We overrule Cadle's second issue.

## CONCLUSION

We affirm the trial court's judgment.

█

**25.** *First Am. Title Ins. Co. v. Willard,* 949 S.W.2d 342, 352 (Tex.App.—Tyler 1997, writ denied) (op. on reh'g).

**26.** Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (Vernon 1997).

**27.** *City of Holliday v. Wood,* 914 S.W.2d 175, 178 (Tex.App.—Fort Worth 1995, no writ);

*Street v. Skipper,* 887 S.W.2d 78, 83 (Tex. App.—Fort Worth 1994, writ denied); *Estopar Holdings, Inc. v. Advanced Metallurgical Tech., Inc.,* 876 S.W.2d 205, 211 (Tex.App.— Fort Worth 1994, no writ).

**28.** *City of Holliday,* 914 S.W.2d at 178.