NO. 07-05-0363-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



AUGUST 23, 2007



______________________________




CHAIN-C, INC., A TEXAS CORPORATION; HERRING NATIONAL BANK 


and JANE SLEMP BURGESS, CO-TRUSTEES OF THE CORNELIA JOHNSON


SLEMP TRUST; and MONARCH TRUST COMPANY, TRUSTEE OF THE


JESSIE HERRING JOHNSON ESTATE TRUST NO. 1,


 

 Appellants


v.



SEABOARD FARMS, INC., 


 Appellee


_________________________________



FROM THE 69TH DISTRICT COURT OF HARTLEY COUNTY;



NO. 4184-H; HON. RONALD E. ENNS, PRESIDING


_______________________________



Before QUINN, C.J., HANCOCK, J., and BOYD, SJ. (1)

MEMORANDUM OPINION


 In this appeal, appellants Chain-C, Inc., a Texas corporation; Herring National Bank
and Jane Slemp Burgess, Co-trustees of the Cornelia Johnson Slemp Trust, and the
Monarch Trust Company, trustee of the Jessie Herring Johnson Trust No. 1, (herein
collectively referred to as Chain-C) challenge a take-nothing summary judgment in favor
of Seaboard Farms, Inc. (herein Seaboard), in which Seaboard was also awarded attorney
fees. In presenting its challenge, Chain-C argues the judgment was improper because 1)
the contract giving rise to the underlying proceeding was not a real estate option but was
a purchase contract; 2) conditions were not met for the contract's liquidated damages
provision to be applicable; and 3) the trial court failed to "recognize specific performance
as an appropriate remedy." Additionally, Chain-C contends the trial court erred by
awarding Seaboard attorney fees. Disagreeing with Chain-C's challenge, we affirm the
judgment of the trial court.

Background

 On March 25, 2002, Chain-C, as seller, and Seaboard, as buyer, executed the
document giving rise to the controversy underlying this proceeding. The instrument is 
styled as an "Escrow Contract for Purchase of Real Property" and covered the surface
estate and water rights in and to Sections 375 and 376 in Block 44 of the H & TX Survey
in Hartley County. The contract became effective on March 25, 2002, at which time it was
executed by Seaboard and at which time it deposited with the escrow agent the sum of
$25,000. By contractual provision, Seaboard had a one hundred and thirty day
"investigation period" from March 25, 2002, with an additional twenty days thereafter within
which to close on the purchase. Thus, the initial closing date was August 22, 2002. In the
event the deal was not closed within the one hundred fifty day period, the contract provided
that Seaboard could instruct the escrow agent to forward the $25,000 escrow deposit to
Chain-C and extend the closing date to November 1, 2003. By letter dated August 12,
2002, Seaboard instructed the escrow agent to pay the $25,000 to Chain-C with the
comment that "at this time, Buyer is continuing its efforts with diligence to effectuate closing
of the agreement." Additionally, by letter dated September 15, 2003, Seaboard advised
Chain-C that by copy of the letter it was advising the Escrow Agent "to schedule a pre-closing (at which time the final of all documents will be deposit [sic] with the Escrow Agent)
for October 20, 2003, and the closing (at which time the funds and documents will be
exchanged) for October 30, 2003 or as soon thereafter as is feasible and convenient for
the Escrow Agent and the Seller." However, Seaboard did not elect to close the deal, and,
on November 26, 2003, notified Chain-C of its decision not to complete the deal which, it
contends, it was entitled to do pursuant to section 12(a)(ii) of the contract. In this letter, it
affirmed that the $25,000 escrow payment should be paid to Chain-C. As is evident,
Chain-C did not agree with this interpretation, and filed suit seeking specific performance
of the deal and damages. Both sides filed motions for summary judgment, and, as we
noted above, the trial court granted Seaboard's motion.

Relevant contractual provisions

 1. CONSIDERATION: The parties agree that the total purchase price for the
property shall be Nine Hundred Sixty Thousand Dollars ($960,000.00) for approximately
1,280 acres (the "Purchase Price").

 Upon execution of this Agreement, Buyer shall deposit with the Escrow Agent the
sum of Twenty Five Thousand and 00/100 dollars ($25,000.00) (the "Escrow Payment").
If this agreement is not terminated pursuant to Section 12a hereto and the Agreement has
not closed 150 days from the Effective Date of this Agreement, the Escrow Agent shall be
instructed by Buyer to pay all (100%) of the Escrow Payment to the Seller as consideration
for an option to close on the purchase of the Property no later than November 1, 2003 (the
"Option Payment"). If the Option Payment is disbursed to Seller and this Agreement is not
terminated by Buyer pursuant to Section 12, then the Purchase Price due at closing shall
be reduced by the Option Payment.

12. CANCELLATION AND BREACH:

a. Cancellation of this Agreement: This Agreement shall be terminated upon the
occurrence of any of the following:

i. If Buyer has not notified Seller in writing within twenty (20) calendar days after the
Investigation Period [130 days after the execution of the contract] expires that all the
conditions in Section 2 hereof have been satisfied or Buyer has waived such conditions;

ii. If following twenty (20) calender days after the Investigation Period [130 days after the
execution of the contract] expires, Buyer at anytime notifies Seller in writing of its
termination of the Agreement; or

iii. If Buyer gives written notice of termination to Seller on account of Seller's failure to
observe any material obligation of this Agreement.

b. Effect of Cancellation or Breach: If this Agreement terminates, Seller's deed and
Power of Attorney shall be returned to Seller and:

i. If this Agreement is terminated pursuant to Section 12 a i then no party shall have any
liability to the other party hereunder, this Agreement shall terminate, and Escrow Agent
shall return the Escrow Payment to Buyer and neither Seller or Buyer shall have any further
obligation to the other hereunder.

ii. If terminated pursuant to Section 12 a ii, this Agreement shall terminate and the Option
Payment disbursed to Seller shall remain the property of the Seller and neither Seller nor
Buyer shall have any further obligation to the other hereunder.

iii. If terminated pursuant to Section 12 a iii, Buyer may terminate this Agreement and shall
have such rights and remedies as shall be allowed by law and in equity.

iv. In the event of any litigation arising out of this Agreement, the prevailing parties shall
be entitled to recover its costs and reasonable attorney's fees.

As we have noted, the trial court granted Seaboard's summary judgment and denied
Chain-C's motion. Hence, this appeal.

Standard of Review

 The standards by which orders granting summary judgment are reviewed are, by
now, axiomatic and we refer the parties to the seminal decision of Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1997). Those standards require that
the movant for summary judgment has the burden of showing that there is no genuine
issue of material fact and it is entitled to judgment as a matter of law, that in deciding
whether there is a disputed material fact issue evidence favorable to the non-movant will
be taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Id. 

 Although their implementation is sometimes difficult, the rules governing the
construction of a contract are well established. Where, as here, neither party contends the
contract is ambiguous, its construction must be resolved as a matter of law. Borders v.
KRLB, Inc., 727 S.W.2d 357, 359 (Tex. App.-Amarillo 1987, writ ref'd n.r.e.). Our primary
concern is to ascertain the true intent of the parties as expressed in the contract. Id. To
achieve that objective, we must examine and consider the entire writing in an effort to
harmonize and give effect to all the provisions of the contract. Questa Energy Corp. v.
Vantage Point Energy, Inc., 887 S.W.2d 217, 221 (Tex. App.-Amarillo 1994, writ denied). 
In conducting our examination, we accord the words used in the contract their plain,
ordinary, and generally accepted meaning, unless the instrument provides otherwise. Sun
Operating, Ltd. v. Holt, 984 S.W.2d 277, 285 (Tex. App.-Amarillo 1998, pet. denied);
Phillips Petroleum Co. v. Gillman, 593 S.W.2d 152, 154 (Tex. Civ. App.-Amarillo 1980, writ
ref'd n.r.e.). 

 In applying the foregoing rules we may not rewrite the contract to mean something
it did not mean. Borders, 727 S.W.2d at 359. The parties to a contract are considered as
masters of their own choices and are entitled to select what terms and provisions to include
in a contract, and they are entitled to rely upon the words selected to demarcate their
respective obligations and rights. In sum, the parties strike the deal they choose to strike,
and, in doing so, they are bound by the agreement as written. Emmer v. Phillips Petroleum
Co., 668 S.W.2d 487, 490 (Tex. App.-Amarillo 1984, no writ). 

Analysis

 Chain-C argues that the contract at issue was "both an option contract and a
contract for sale of land." Specifically, it reasons that the option contained in the contract
was for an extension of time within which to close the deal, the $25,000 was a separate
payment for the extension of time within which to close the deal to no later than November
1, 2003, and Seaboard as the Buyer, "no longer had an unbridled right to terminate the
contract 'at any time' but could do so only prior to the closing date which it specified." 
(Emphasis in original). It concludes that because it satisfied all conditions of the contract
and was ready, willing, and able to conclude the contract on or before November 1, 2003,
and Seaboard had not exercised its section 12(a)(ii) right to terminate by that time,
Seaboard had materially breached the contract and the trial court erred in concluding
otherwise.

 The primary test for determining whether a real estate agreement is an option
contract or a sale contract is whether the contract imposes a mandatory obligation upon
the seller to accept a sum stipulated as liquidated damages in lieu of the purchaser's
further liability. Cadle Co. v. Harvey, 46 S.W.3d 282, 286 (Tex. App.-Fort Worth 2001, pet.
denied); Gala Homes, Inc. v. Fritz, 393 S.W.2d 409, 411 (Tex. Civ. App.-Waco 1965, writ
ref'd n.r.e.); see also Seelbach v. Clubb, 7 S.W.3d 749, 756 (Tex. App.-Texarkana 1999,
pet. denied) (when seller's only contractual remedy is retention of the earnest money, the
agreement is an option). In the absence of such a provision, it is a sale contract. Cadle
Co., 46 S.W.3d at 286; cf. Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co.,163
Tex. 250, 353 S.W.2d 841, 843 (1962). 

 Under the instant contract, Seaboard was only obligated to instruct the escrow agent
to deliver the $25,000 in order to extend its option to purchase until November 1, 2003. 
As we have noted, paragraph 12(a)(ii) specifically provided that "at any time" after the
investigation period, Seaboard could notify Chain-C in writing of its termination of the
Agreement, which it did on November 26, 2003. 

 We do not agree with Chain-C that the references to potential closing dates in
Seaboard's September 15, 2003 letter were sufficient to obligate it to complete the
purchase unless it exercised its section 12(a)(ii) option prior to the closing date. The
rightholder's exercise of an option to purchase must be positive, unconditional, and
unequivocal. See Texas State Optical, Inc. v. Wiggins, Inc., 882 S.W.2d 8, 10-11 (Tex.
App.-Houston [1st Dist.] 1994, no writ). Nothing in that correspondence is sufficient to
modify or release the section 12(a)(ii) provision that Seaboard might terminate the contract
"at any time" was clear, explicit, and without limitation. To hold otherwise would be to
rewrite the contract, which we cannot do. 

 Chain-C also contends that because the trial court erred in entering summary
judgment in favor of Seaboard, it also erred in awarding Seaboard attorney fees. Our
holding that the trial court did not err in rendering its judgment obviates the necessity for
discussing that issue.

 In sum, Chain-C's issue is overruled and the judgment of the trial court is affirmed.


 John T. Boyd

 Senior Justice


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006). 


 impliedly found that Stewart's medical expenses were
$16,687.80, that her damages for physical pain and mental anguish were zero, and that
such finding created a conflict in the jury's verdict [sic]. 

 Stewart cites two cases to support her argument: Hicks v. Ricardo, 834 S.W.2d 587
(Tex.App.--Houston [1st Dist.] 1992, no writ), and Davis v. Davison, 905 S.W.2d 789
(Tex.App.--Beaumont 1995, no writ). (4) In Hicks, the appellate court found that it was
inconsistent for the jury to find damages for past mental anguish but not for future mental
anguish when the same circumstances that produced at least some of the previous
anguish were likely to recur, and there was evidence that the plaintiff's injury would
continue to adversely affect her in the future. See Hicks, 834 S.W.2d at 591-92. Hicks did
not present an issue concerning whether the trial court's granting of a judgment credit for
payments in consideration of potential liability created a conflict within the jury's answers
via an "implied finding" by the trial court. Hicks is not applicable to Stewart's issue. 

 In Davis, the jury's award of zero damages in a negligence action was held to be
contrary to the weight and preponderance of the evidence where the objective evidence
demonstrated that the plaintiff received first and second degree burns as a result of the
defendant's negligence. See Davis, 905 S.W.2d at 791. Davis did not address the
question of whether the trial court's allowing a judgment credit for amounts paid in
consideration of potential liability resulted in an implied finding by the court in conflict with
the jury findings. We do not consider Davis apposite to Stewart's issue. 

 Stewart's underlying premise for issue four is her conclusion that the trial court
made an implied finding that her cost of reasonable and necessary medical care for
injuries resulting from the occurrence was $16,687.80. She has, however, cited no
authority for her assertion that merely by allowing credit for advance payment of medical
expenses by Tat's insurer, the trial court made such an implied finding. Under such
circumstances, the issue is waived by inadequate briefing. See, e.g., Tex. R. App. P.
38.1(h); Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994); 
Trenholm v. Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983); Gulf Coast State Bank v.
Emenhiser, 562 S.W.2d 449, 452-53 (Tex. 1978). 

 Moreover, TCPRC Chapter 33 does not provide that settlement amounts either must
be, or can be, allocated to particular elements of actual damages such as medical care,
lost wages, lost earning capacity or physical pain and mental anguish and then those
allocated amounts credited only to damages found for corresponding elements by the
factfinder. We will not engraft such a requirement into the statute. Tat's complied with the
requirement that in order to receive credit, it show an amount paid in consideration of
potential liability to Stewart. See TCPRC § 33.011(5); Ellender, 968 S.W.2d at 927. We
overrule Stewart's fourth issue. 



 The judgment of the trial court is affirmed. 




 Phil Johnson

 Justice




Do not publish. 

1. The question provided for a single answer encompassing the elements of past and
future (1) physical pain and mental anguish, (2) physical impairment, (3) reasonable and
necessary medical care, and (4) loss of earning capacity. The jury was instructed that it
should not include any amount for any condition not resulting from the occurrence, or for
any condition existing before the occurrence. 
2. Stewart does not challenge the applicability of Chapter 33 of the Civil Practice and
Remedies Code. Further reference to provisions of the Code will be by referring to
"TCPRC §_."
3. Section 33.012(b) of the TCPRC provides that: 

 If the claimant has settled with one or more persons, the court shall further
reduce the amount of damages to be recovered by the claimant with respect
to a cause of action by a credit equal to one of the following, as elected in
accordance with Section 33.014:

 (1) the sum of the dollar amounts of all settlements;

* * *


 Section 33.014 provides in relevant part, "[i]f a claimant has settled with one or
more persons, an election must be made as to which dollar credit is to be applied under
Section 33.012(b). This election shall be made by any defendant filing a written election
before the issues of the action are submitted to the trier of fact and, when made, shall be
binding on all defendants.

 For the purposes of the comparative responsibility law, a defendant who has paid
money to or on behalf of a plaintiff in partial consideration of potential liability is considered
to be a "settling person." See C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 320
(Tex. 1994). 
4. Cited in appellant's brief as Davis v. Davis.