

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00585-CV

Kay Lynn **MAYNARD** f/k/a Kay Lynn Maynard Booth,
Appellant

v.

William **BOOTH**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2010-CVH-001376-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  November 27, 2013

AFFIRMED; MOTION TO DISMISS DENIED

On September 22, 2011, in connection with their divorce, Kay Lynn Maynard and William

Booth signed a hand-written agreement dividing their marital assets ("the settlement agreement").

Later a dispute arose over whether William breached the settlement agreement.  The trial court

found William breached the agreement and signed a Final Judgment and Decree of Divorce on

August 10, 2012.  Kay has appealed the judgment, and William filed a motion to dismiss that was

carried with the appeal.[1]  Kay raises two issues on appeal: (1) in the decree, she should have been awarded $42,000 in lost hog hunting income instead of only $18,000 and (2) the trial court should have awarded her an additional $178,000 in attorney's fees.  We affirm.

## STANDARD OF REVIEW

Kay cites this court to both legal and factual sufficiency standards of review in her briefing.  However, in her prayer for relief, Kay requested only that this court reverse the trial court's judgment and render in her favor.  Kay did not request, in the alternative, a remand for a new trial.  During oral argument, Kay's attorney stated Kay wanted a judgment rendered in her favor.  Therefore, we review the evidence only under a legal sufficiency standard.  *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986) (per curiam) (reiterating well-settled rule that "no evidence" points require rendition in favor of appealing party); *Elias v. Mr. Yamaha, Inc.*, 33 S.W.3d 54, 59 & n.6 (Tex. App.—El Paso 2000, no pet.) (construing appellant's challenge as a legal sufficiency challenge because he asked appellate court to render judgment in his prayer for relief).

When the party who had the burden of proof at trial complains of the legal insufficiency of an adverse finding, that party must demonstrate the evidence establishes conclusively (i.e., as a matter of law) all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).  A reviewing court must examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary.  *Id.*  If more than a scintilla of evidence supports the adverse finding, the issue is overruled.  *Id.*  If there is no evidence to support the adverse finding, the entire record must be examined to determine whether the contrary proposition is established as a matter of law.  *Id.*  The issue is sustained only if the contrary proposition is

---

[1] William died after the appeal was filed and an administrator was later appointed.  We deny the motion as moot.

conclusively established. *Id.* The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 819.

## HOG HUNTING INCOME

As a result of the delay between signing the settlement agreement and the divorce decree, Kay claimed she lost income because she was not able to allow hog hunting on her side of the ranch. The trial court awarded Kay $18,000 as lost hog hunting income. On appeal, Kay contends she proved lost hog hunting income in the amount of $42,000 as a matter of law. Kay offered into evidence several hog hunting contracts from people who knew she and William were getting a divorce and who she knew "would love to come back on my side of the ranch." However, the contracts were from 1991 to 1997, years before the divorce. Kay admitted that no hog hunting had been conducted on the ranch for six to seven years. When such hunts were conducted, she and William would schedule about six men for a three-day hunt during January, February, and March. She said if she could have done that again starting in January 2012, she would charge $200 per day per man. Kay calculated that at $600 per man per weekend, times four weekends a month for three months, she would have earned $42,000.

A report prepared by Kay's expert stated hunting operations were "substantially ceased due to concerns over legal liability issues." Kay stated the hunting and cattle operations on the ranch were always profitable. However, the report stated the community estate suffered tremendous losses from the hunting and cattle operations from 1996 through 2011, and after 2003 there was no revenue from hunting operations. Her expert's report showing the ranch suffered a loss contradicts Kay's testimony. William's expert acknowledged, after reviewing the report that the purpose of the report was to determine whether the community estate was entitled to an offset.

William's expert conceded whether the ranch suffered a loss for the purpose of an offset had nothing to do with whether Kay could have or should have gotten any hog hunting revenue.

Although Kay's testimony that she could have earned $42,000 was not contradicted, this testimony was based on her hope that hunters would have contracted with her in January, February, and/or March 2012. However, she also testified no hog hunting had been conducted on the ranch for six to seven years preceding the divorce. In this case, the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. Based on this record, we cannot say Kay established, as a matter of law, her entitlement to $42,000 in lost hog hunting income.

## ATTORNEY'S FEES

In the divorce decree, the trial court awarded Kay attorney's fees as follows:

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that KAY LYNN MAYNARD BOOTH recover attorney's fees reasonably and necessarily incurred after October 12, 2011, for services rendered in the trial through June 28, 2012, in the amount of Two Hundred Thousand Dollars ($200,000); provided however, if this case is not appealed to the court of appeals, One Hundred-Thirty Thousand Dollars ($130,000) shall be remitted; provided further, if this case is appealed to the Court of Appeals, but not to the Texas Supreme Court, Fifty Thousand Dollars ($50,000) shall be remitted.

Contrary to Kay's contention on appeal that the trial court erred in not awarding her attorney, James Jones, *any* fees, the judgment does not award fees specific to any attorney. Instead, the judgment awards a net lump sum to Kay for reasonable fees. Kay asserts she should have been awarded an additional $178,002.00, which is the amount of fees billed by Jones.

The parties agreed to a bench trial only on the issues of whether William breached the settlement agreement and attorney's fees. The court agreed with William's lawyer that the agreement called for each party to pay their own attorney's fees. Kay's attorneys argued they were not seeking fees prior to the date of the settlement agreement, but were instead, seeking fees

resulting from William's breach of the agreement. The court again stated Kay was responsible for her own fees, but allowed her attorneys to make a bill of exception record.

Kay's attorneys stated the breach of contract claim was first asserted in February 2012. Kay's three attorneys then each testified in "bills of exception." Adan Gonzalez testified his time was spent on both the divorce and the breach of contract action, and he averaged about $10,000 per month in fees, from February 2012 to June 2012, for a total of approximately $50,000. Cheryl Wilson testified she was retained in February or late March 2012, after William breached the agreement. She billed approximately $40,000. Jones testified his fee invoice was dated "6/22" but it should be "9/22" for services rendered since the date of the agreement. His fees totaled $178,002, at his hourly rate of $450.00 multiplied by 395.56 hours.

On appeal, Kay asserts William never contested the qualifications or invoices of any of her attorneys, and Jones's testimony was uncontradicted. This is true in part because the trial court did not allow any cross-examination during the bills of exception; however, William did raise an objection to Jones's Invoice No. 11084. Invoice 11084 indicates services for "Additional Charges" in the amount of $67,192.65, and "Professional Services" in the amount of $178,002.00. William objected that the invoice did not segregate fees related to the breach of contract claim from fees related to the divorce. The portion of the invoice related to "Professional Services" states as follows:

> For services rendered from the date of settlement by [Kay] including preparation for and attendance of mediation of case; preparation for and attendance of multiple meetings with client and client's parents and witness[es]; preparation of settlement documents; review of multiple drafts of same; preparation for and attendance of multiple hearings for entry of judgment; preparation for and attendance of depositions of Kay, William, Mrs. Booth, Teresa McComas, Dr. Jack Ferrel, Sterling, Redmond, and Hill; preparation for and attendance of further hearings of various motions by court; preparation for trial; research of issues; analysis of evidence.

The trial court determined William breached the settlement agreement; therefore, an award of reasonable attorney's fees to the prevailing party was mandatory if there was proof of the reasonableness of the fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008); *Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, the amount of the award lies within the discretion of the trial court. *Hassell Constr. Co.*, 162 S.W.3d at 668. And, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819. Finally, "[a] meaningful review of the hours claimed is particularly important because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012).

Here, although Kay's attorney's fees evidence was not controverted, the trial court has discretion in determining what amount of attorney's fees is reasonable. Jones stated he dictated the invoice a few days before trial. At trial, to arrive at the number of hours he expended on the case, Jones divided $178,002.00 by his hourly rate of $450 to arrive at 395.56 hours. The invoice does not indicate and Jones did not testify about any record of his time attributable to each of the various tasks mentioned in the invoice. Nor did he segregate fees related to the breach of contract claim from any fees related to the divorce. The trial court awarded fees of $200,000 for services rendered after the date of October 12, 2011 "provided however, if this case is not appealed to the court of appeals, One Hundred-Thirty Thousand Dollars ($130,000) shall be remitted; provided further, if this case is appealed to the Court of Appeals, but not to the Texas Supreme Court, Fifty Thousand Dollars ($50,000) shall be remitted." On this record, we cannot conclude the trial court abused its discretion in awarding attorney's fees in the amount it did. *See City of Laredo v. Montano*, No. 12-0274, 2013 WL 5763179, at *4 (Tex. Oct. 25, 2013) (encouraging attorneys using lodestar method to shift their fees to opponent to keep contemporaneous records of their time

as they would for their own client; concluding attorney's testimony was "devoid of substance" because he did not itemize specific tasks or the time required for those tasks).

## CONCLUSION

We overrule Kay's issues on appeal, and affirm the trial court's judgment.


Sandee Bryan Marion, Justice