# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00375-CV

---

**Appellants, Kevin Green and Amy Edwards, Individually and as Trustees of The Edwards Green Revocable Living Trust // Cross-Appellants, Villas on Town Lake Owners Association, Inc.; Steve Maitlen; Lora Herring; Geraldine White; Gary Johnson; and David Williams**

**v.**

**Appellees, Villas on Town Lake Owners Association, Inc.; Steve Maitlen; Lora Herring; Geraldine White; Gary Johnson; David Williams; and Austin Valuation Consultants, Ltd. // Cross-Appellees, Kevin Green and Amy Edwards, Individually and as Trustees of The Edwards Green Revocable Living Trust**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-003004, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is a dispute over the division of proceeds from the sale of a condominium complex. Kevin Green and Amy Edwards (the Greens) sued the Villas on Town Lake Owners Association and the members of its board (collectively, the Villas) for failing to properly compensate the Greens for their four units. The district court dismissed the Greens' claims on summary judgment and awarded the Villas their fees and taxable court costs. However, the district court denied the Villas' request for additional litigation costs under Section 82.161 of the Uniform Condominium Act. Both parties appealed. For the following reasons, we will affirm.

**BACKGROUND**

The Villas at Town Lake was a fifty-eight-unit condominium complex on the shore of Lady Bird Lake in Austin. The condominium's governing documents provided that each owner possessed an undivided ownership interest in the complex's common elements proportional to the square footage of the owner's unit. In 2014, the Greens purchased four units, thereby obtaining a 5.955403% share of the common elements. The Greens immediately began renovations to merge their units into a single living space. The renovations were still in progress two years later when the Sutton Company offered to purchase the entire complex for $50,850,000. The Greens then stopped the renovations, leaving the units (in the words of their live petition) "destroyed, empty and uninhabitable."

Completing the sale required termination of the condominium regime, a process that is governed by Section 82.068 of the Act. *See generally* Tex. Prop. Code § 82.068. When the real property will be sold following termination, the proceeds "must be distributed to unit owners and lienholders as their interests may appear, in proportion to the respective interests of unit owners as provided by Subsection (f)." *Id.* § 82.068(c). The "interest of an owner" for these purposes is "the fair market value of the owner's unit, limited common elements, and common element interest immediately before the termination, as determined by one or more independent appraisers selected by the association." *Id.* § 82.068(f). The "proportion of a unit owner's interest to that of all unit owners is determined by dividing the fair market value of the unit owner's unit and common element interest by the total fair market values of all the units and common elements." *Id.* The appraisal becomes final thirty days after it is distributed to the unit owners unless a certain percentage of owners vote to disapprove it. *Id.*

The Association retained Evergreen Valuation Services to conduct an appraisal. Evergreen determined that "highest and best use" of the property would be "demolition of the existing improvements and redevelopment with a high-density project." Based on this determination, Evergreen did not appraise the individual value of each owner's units. Instead, Evergreen started with the value of the land if it was vacant and deducted the cost of demolishing the existing improvements to arrive at an estimated fair market value of $45,400,000. The Association submitted the Evergreen Appraisal to the unit owners and informed them that the proceeds of the sale would be distributed according to each owner's percentage share of the common elements. The Evergreen Appraisal became final after thirty days.

Two dissenting owners—Teddy Parker Terhune and Katherine Lindsay—sued the Association arguing that the sale and appraisal violated the Act (the *Terhune* suit). They sought declaratory relief that Section 82.068(f) requires an appraisal of the fair market value of each individual unit in addition to the value of the owner's share of the common elements. The Association answered and counterclaimed for declaratory relief that, among other things, the appraisal complied with Section 82.068. The Association filed a motion to dismiss and a motion for summary judgment. The trial court denied relief and concluded that Section 82.068(f) required appraisal of the fair market value of each owner's individual unit *and* their share of the common elements. The parties reached a mediated settlement agreement in which the Association agreed to have a second appraisal of the property done and to value each unit "as if it were being individually sold in an arms-length transaction." The trial court subsequently rendered an agreed judgment dismissing the *Terhune* suit with prejudice.

The Association hired Austin Valuation Consultants to perform a second appraisal (Austin Appraisal). Austin Valuation determined that the total value of the Greens' units was

3

$1,093,612, which included a $306,388 deduction for the estimated cost of bringing the units up to "marketable condition."  As a result, the Greens' proportional ownership interest fell from 5.955403% in the Evergreen Appraisal to 3.92% in the Austin Appraisal.  The Austin Appraisal was distributed to the owners and became final after thirty days.

The Greens sued the Villas for breach of fiduciary duty under the Act, *see id.* § 82.103(a), and for failing to pay the Greens their full share of the proceeds, *see id.* § 82.068(f). They sought a declaration under the Uniform Declaratory Judgment Act (UDJA) that Section 82.068 required that their units "be valued at their common interest element," i.e., that the complex be appraised without considering the value of the individual units.  *See* Tex. Civ. Prac. & Rem. Code § 37.004 (providing that "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the [] statute . . . and obtain a declaration of rights, status, or other legal relations thereunder").  In effect, the Greens argued that the proceeds should be distributed according to the Evergreen Appraisal rather than the Austin Appraisal.  The Greens also sued Austin Valuation for negligence in conducting the appraisal.

The Villas answered and asserted the affirmative defenses of res judicata and collateral estoppel, among other defensive theories, and sought attorney's fees.  Austin Valuation, which was represented by different counsel, also answered.  While the litigation was ongoing, the owners voted to terminate the condominium regime and sell the property to Sutton. Republic Title Insurance Company, which handled the sale, filed an interpleader action and deposited the portion of the proceeds set aside for the Greens into the registry of the court.  By agreement of the parties, all but $250,000 was distributed to the Greens.

4

The district court granted summary judgment and rendered a take nothing judgment in favor of Austin Valuation. The Villas then filed a partial traditional motion for summary judgment on their affirmative defenses. The Greens subsequently filed a partial motion for summary judgment arguing that there was no evidence to support the Villas' affirmative defenses and that the Greens were entitled to judgment as matter of law on their affirmative claims. *See* Tex. R. Civ. P. 166a(c), (i). The district court granted the Villas' motion for summary judgment expressly on their res judicata and collateral estoppel defenses and denied the Greens' motion.

The parties (excluding Austin Valuation) then tried the issue of attorney's fees to the bench. Cathy Kyle, one of the Villas' attorneys, testified in support of their fee application, and the district court admitted the resumes of the Villas' counsel and redacted fee statements from three firms that worked on the case for the Villas. The district court later rendered a final judgment that incorporated its summary judgment rulings and awarded the Villas $210,438.50 in attorney's fees incurred at trial, conditional appellate fees, and taxable costs of court, and denied the Villas' request for $14,000 in "pass-through litigation expenses" under the Act. *See* Tex. Prop. Code § 82.161(b) ("The prevailing party in an action to enforce the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party."). The district court filed findings of fact and conclusions of law in support of its judgment. Both parties filed notice of appeal.

5

<h1 style="text-align:center">THE GREENS' APPEAL</h1>

The Greens argue on appeal that the district court erred by granting the Villas' traditional motion for summary judgment and denying the Greens' combined motion. We begin with the ruling on the Villas' traditional motion because it is dispositive.

## Summary Judgment

We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). A party moving for traditional summary judgment has the burden to show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *JLB Builders*, 622 S.W.3d at 864. A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish each element of that defense. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021).

Res judicata, also known as claim preclusion, "bars the relitigation of claims that have been finally adjudicated or that could have been litigated in the prior action." *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017). The party relying on res judicata must prove: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were or could have been raised in the first action. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). "The judgment in the first suit precludes a second action by the parties and their privies on matters actually litigated and on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit." *Id.* (citing

6

*Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)). The first and second elements are in dispute.

The Greens argue that there was no final judgment on the merits because the suit "was voluntarily dismissed by the Terhune plaintiffs as a result of a settlement." But the *Terhune* suit was dismissed with prejudice, and "it is well established that a dismissal with prejudice functions as a final determination on the merits."[1] *Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999) (per curiam) (citing *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) (per curiam)); *see Energy v. Trinity Universal Ins. Grp.*, No. 03-12-00842-CV, 2014 WL 2522203, at *2 (Tex. App.—Austin May 29, 2014, no pet.) (mem. op.) ("Dismissal with prejudice constitutes a final determination on the merits."). Further, a "judgment of dismissal entered by agreement of the parties in pursuance of a compromise or settlement of a controversy becomes a judgment on the merits." *Lexington v. Treece*, No. 01-17-00228-CV, 2021 WL 2931354, at *9 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (citing *Essman v. Gen. Acc. Ins. Co. of Am.*, 961 S.W.2d 572, 574 (Tex. App.—San Antonio 1997, no pet.)). We conclude that the agreed judgment of dismissal in the *Terhune* suit is a final determination on the merits for purposes of res judicata.

Next, the Greens argue that the record does not conclusively establish that they were in privity with the Villas. A person can be in privity with a party to a judgment in at least

---

[1] The judgment stated:

> It is therefore ORDERED that this lawsuit is dismissed in its entirety with prejudice to refiling the same, including any claims arising out of the Rudy Robinson appraisal, Sutton contract for sale, termination of condominium regime for the Sutton sale or distribution from the sale of The Villas resulting from the Sutton sale.

three ways: (1) by controlling the action that resulted in the judgment without being a party to it; (2) by having its interests represented by a party to the action; or (3) by acting as a successor in interest to a party to the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). However, "[t]here is no general definition of privity that can be automatically applied in all res judicata cases; the circumstances of each case must be examined." *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992).

"An analysis to determine whether a person is in privity with a party to a prior judgment begins by examining the interests the parties shared." *Truck Ins. Exch. v. Mid-Continent Cas. Co.*, 320 S.W.3d 613, 618 (Tex. App.—Austin 2010, no pet.). Privity exists if "the parties share an identity of interests in the basic legal right that is the subject of litigation." *Amstadt*, 919 S.W.2d at 653. In the *Terhune* suit, the Association sought a finding that the Evergreen Appraisal—which did not independently appraise the value of the units—complied with Section 82.068. The Greens now seek a finding that Section 82.068 requires that their units "be valued at the common interest elements," i.e., the value of the land. That both the Association and the Greens sought essentially the same legal ruling on the same facts is "some indication that they share an identity of interest in the basic legal right that is the subject of both lawsuits." *See BP Auto. LP v. RML Waxahachie Dodge, LLC*, 517 S.W.3d 186, 202 (Tex. App.—Texarkana 2017, no pet.). Moreover, the Greens were among the owners who voted for the Association to defend the *Terhune* suit on their behalf, *see* Tex. Prop. Code § 82.102(a)(1)(4) (providing that owners association may "institute, defend, intervene in, settle, or compromise litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium"), and Kevin Green, an attorney, was closely involved in the litigation. In November 2016, Green emailed counsel for the Association that he

8

would not be intervening and requested to review the pleadings in the case. Two days later, Green emailed counsel that he had "reviewed the MSJ pleadings and they look great." Four days later, Green approached Lindsay and attempted to personally negotiate a settlement. Green wrote to counsel again later that he considered their efforts a "joint prosecution." The evidence shows that the Greens considered that the Association represented their interests in the *Terhune* lawsuit.

The Greens respond that the Association turned against them by rejecting their proposal "to pay the *Terhune* plaintiffs in order to obtain favorable provisions regarding appraisal as part of the settlement of the *Terhune* Lawsuit." As proof of this allegation, the Greens point to a letter Kevin Green received from the Association's counsel. The letter states that it is in response to Green's "prior allegation" that the Association was "negligent in not enabling [Green] to pay Lindsay and Terhune off to settle the lawsuit." Even if we assume that the Association would have had such a duty and that violating it would destroy privity, the letter also states that Green "had meetings with [Terhune and Lindsay] and you yourself asked them for a dollar figure pay off and they declined to provide you one." The letter continues that the Association asked Terhune and Lindsay "for a dollar figure payoff and they declined to ever provide one. The first and only dollar figure they present as something that would settle the case came at mediation, and even that was only in conjunction with a new appraisal." The Greens do not dispute the factual assertions in the letter or explain what more the Association should have done to represent their interests.

In sum, the evidence conclusively shows that the Greens and the Villas share "an identity of interests in the basic legal right that is the subject of litigation." *See Amstadt*, 919 S.W.2d at 653. We therefore conclude that the Villas were entitled to summary judgment on

9

their affirmative defense of res judicata. Because this ruling is sufficient to uphold the dismissal of the Greens' claims with prejudice, we do not reach the Greens' remaining challenges to the summary judgment. *See* Tex. R. App. P. 47.1 (instructing appellate courts to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

**Attorney's Fees**

Next, the Greens challenge the award of $210,438.50 in attorney's fees and conditional appellate fees under the UDJA and the Act. *See* Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under [the UDJA], the court may award costs and reasonable and necessary attorney's fees as are equitable and just."); Tex. Prop. Code § 82.161(b) ("The prevailing party in an action to enforce the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party."). The Greens argue that the district court erred because (1) there is insufficient evidence that the fees are reasonable and necessary; (2) the Villas failed to segregate their fees; and (3) the award of appellate fees is not contingent on the Villas prevailing.

*Sufficiency of the Evidence*

First, the Greens argue that there is legally insufficient evidence that the fees were reasonable.[2] We review an award of attorney's fees for an abuse of discretion. *See Sullivan*

---

[2] The Greens argue in this issue that the Villas "provided legally and factually insufficient evidence of its reasonable and necessary attorneys' fees" but make only legal sufficiency arguments—that there is "no evidence" to support the reasonableness of the fees. *See, e.g., Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). They also ask this Court to render a take nothing judgment, relief which is not available in a factual sufficiency challenge. *See Wright Way Spraying Serv. v. Butler*, 690 S.W.2d 897, 898 (Tex.

*v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (stating that decision regarding award of "reasonable attorney's fees" generally "rests within the court's sound discretion"). "It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (internal citations omitted). However, a trial court does not abuse its discretion "if some evidence reasonably supports the court's ruling." *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017).

When an appellant challenges the legal sufficiency of a finding on which it did not have the burden of proof, it must show that there is no evidence to support the finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a legal sufficiency challenge if: (1) there is a complete lack of evidence of a vital fact, (2) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a scintilla of evidence offered to prove a vital fact, or (4) the evidence conclusively establishes the opposite of the vital fact. *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 783 (Tex. 2020). When reviewing the record for legal sufficiency, we consider the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Id.*

---

1985) (reiterating that if appellate court finds evidence factually insufficient "it must reverse the judgment of the trial court and remand for new trial" and has "no jurisdiction to render" judgment). Because the Greens make only legal sufficiency arguments and request that we reverse and render judgment in its favor, we construe this issue as a legal sufficiency challenge. *See Maynard v. Booth*, 421 S.W.3d 182, 183 (Tex. App.—San Antonio 2013, pet. denied) (construing similarly-briefed issue as legal-sufficiency challenge).

11

To support its claim for attorney's fees, the Villas submitted fee statements from the three law firms that have worked on the case, biographies of the attorneys who represented the Villas, and the testimony of one of their counsel, Cathy Kyle. Kyle testified that she concluded the fees incurred in this case were reasonable by employing the lodestar method, which entails multipying the reasonable hours worked by a reasonable hourly rate, the product of which is the base fee or lodestar. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). The supreme court has held that sufficient evidence to support this calculation "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id*. The lodestar method is essentially a "short hand version" of the *Arthur Andersen* factors for assessing the reasonableness of attorney's fees. *See id.* at 490 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). Kyle discussed each of the lodestar factors and several of the more specific *Arthur Anderson* factors in detail during her testimony.

The Greens argue that Kyle's testimony amounts to no evidence because the fee statements are too heavily redacted to enable the district court to determine the particular services performed. The fee statements show the name of the client, the matter name, the date of the service rendered, the initials of the person completing the service, a description of the work that was done, and the time spent recorded in tenths of an hour. Some of the entries are partially redacted. For example, an entry for August 24, 2017 states that Timothy B. Poteet spent half an hour in a "telephone conference [with] client attorney, C. Heyer, regarding [redacted]." An entry dated May 14, 2017 states that Karen C. Burgess spent .70 of an hour on: "[E]mails from

12

[redacted]; draft declaration release affirming validity of the termination of the Condominium regime and email correspondence regarding same." Other redactions hide the topics attorneys spent time researching, the substance of communications between attorney and client, as well as what appear to be inter-firm communications regarding the case. The Greens argue that this is insufficient because a fee applicant must submit written records to prove reasonable time spent on the case.

We disagree. The Greens rely on the supreme court's observation in *El Apple* that while an attorney can testify to the performance of specific tasks, "in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012). But the supreme court later explained that "*El Apple* does not hold that a lodestar fee can only be established through time records or billing statements." *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013); *see Rohrmoos*, 578 S.W.3d at 502 (reaffirming that "[c]ontemporaneous billing records are not required to prove that the requested fees are reasonable and necessary" but are "strongly encouraged"). Even if we assume that the Greens are correct that the redactions are too extensive for the fee records to support the judgment alone, the district court could reasonably credit Kyle's testimony concerning the other *Arthur Anderson* factors: the fees customarily charged in Travis County for similar services; the likelihood that working on the case would preclude acceptance of other employment by the lawyer; that the case involved several legal questions of first impression; that the Greens sought more than a million dollars in damages; and the expertise and reputation of the counsel involved in the case. *See Arthur Andersen*, 945 S.W.2d at 818. The Greens do not dispute that Kyle—an attorney who has practiced law in Austin for more than thirty-five years—was knowledgeable regarding these

13

matters, and they presented no evidence contradicting her testimony. Considering the entire record in the light most favorable to the fee award, we conclude that there is legally sufficient evidence that the $210,438.50 in attorney's fees are reasonable and necessary. *See McMahon v. Zimmerman*, 433 S.W.3d 680, 693 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("[C]ourts are free to look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties to determine a reasonable fee."). The district court therefore did not abuse its discretion in awarding these fees.

*Segregation of Fees*

Next, the Greens argue that the Villas failed to segregate their attorney's fees. Texas follows the American Rule for attorney's fees, which provides that "a party may not recover attorney's fees unless authorized by statute or contract." *Bailey v. Smith*, 581 S.W.3d 374, 396 (Tex. App.—Austin 2019, pet. denied) (citing *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015)). Fee claimants must therefore "segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). An exception to the duty to segregate exists "when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. Whether segregation is required is a mixed question of law and fact. *Id.* at 313.

The Greens argue that the Villas were required to segregate the fees relating to defense of the breach of fiduciary duty claim and the negligence claim. The Greens asserted the negligence claim only against Austin Valuation, which was represented by different counsel, and

14

they have not pointed to anything in the fee statements showing that the Villas' lawyers assisted in the defense of that claim. Instead, the fee statements reflect that the Villas' counsel billed for time spent analyzing the effect of that dispute on their defense of the Greens' claims: reviewing Austin Valuation's responses to the Greens' requests for disclosure and preparing correspondence regarding it; analyzing Austin Valuation's special exceptions; reviewing documents produced by Austin Valuation in discovery; and attending the hearing on the Austin Valuation's motion for summary judgment. The Greens particularly criticize the billing for counsel attending the hearing, but Kyle testified that attending the hearing was necessary because the outcome would impact the distribution of the proceeds. The Greens do not explain how any of these services failed to advance the Villas' defense of the fiduciary duty claim. We conclude that the Villas were not required to segregate these fees.

The Greens' next argument concerns the Act's fee shifting statute, which provides: "[t]he prevailing party in an action to enforce the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party." Tex. Prop. Code § 82.161(b). The Greens argue that this section "applies to the [Greens'] claim that they were not properly paid under Texas Property Code § 82.068, but it does not apply to their claim for breach of fiduciary duty against the Villas." To support this argument, the Greens cite a case stating that attorney's fees are not recoverable on a common-law claim for breach of fiduciary duty absent a statute or contract. *See LandAmerica Commonwealth Title Co. v. Wido*, No. 05-14-00036-CV, 2015 WL 6545685, at *11 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (mem. op.) (collecting cases). But this presumes that the Greens alleged breach of a fiduciary duty arising outside the Act. The Greens specifically alleged that the Villas breached a fiduciary relationship created by the Act. *See* Tex. Prop. Code § 82.103(a) (providing that owners'

15

association can only act through its board and that each "officer or member of the board is liable as a fiduciary of the unit owners for the officer's or member's acts or omissions"). The Greens do not explain why Section 81.161 applies to a claim that the Villas failed to pay the Greens as required by Section 82.068 but not for breach of fiduciary duty under Section 82.103. Under these circumstances, we conclude that the Greens failed to demonstrate that the district court's refusal to require segregation was error. *See Persson v. MC-Simpsonville*, No. 03-20-00560-CV, 2021 WL 3816332, at *2 (Tex. App.—Austin Aug. 27, 2021, no pet. h.) (mem. op.) ("It is an appellant's burden to show error on appeal." (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990))).

### *Unconditional Appellate Fees*

Finally, we turn to the Greens' argument that the award of appellate fees is improper because it is not conditioned on the Villas successfully defending the judgment on appeal. An "award of appellate attorney's fees should be dependent on which party prevails on appeal." *See Northern & W. Ins. Co. v. Sentinel Inv. Grp.*, 419 S.W.3d 534, 541 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The Villas agree and ask us to modify the judgment. We agree and will modify the judgment to condition the recovery of fees on a successful appeal. *See id.* (explaining that appellate courts "may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal").

### Conclusion

We sustain the Greens' issue challenging the unconditional award of appellate fees. We overrule their remaining challenges to the fee award.

16

**CROSS-APPEAL**

The Villas cross-appeal the district court's refusal to award them $14,000 in pass-through litigation costs under Section 82.161 of the Act. The Greens respond that the Villas failed to invoke our appellate jurisdiction by filing a timely notice of cross-appeal. We agree with the Greens.

A timely notice of appeal is necessary to invoke this Court's appellate jurisdiction. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex. 2010) (orig. proceeding); *Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 491 (Tex. App.—Austin 2019, no pet.). Generally, notice of appeal is due within thirty days after the judgment is signed. Tex. R. App. P. 26.1. However, the deadline is extended to ninety days if any party timely files, as relevant here, a proper request for findings of fact and conclusion of law. *Id.* R. 26.1(a)(4). If any party timely files notice of appeal, "another party may file a notice of appeal within the applicable period stated above or 14 days after the first filed notice of appeal, whichever is later." *Id.* R. 26.1(d). The deadline to file a notice of appeal can be extended if, within fifteen days of the deadline, the appellant files the notice of appeal in the trial court and a proper motion for extension of time in the appellate court. *See id.* R. 26.3. However, "once the period for granting a motion for extension of time under [Rule 26.3] has passed, a party can no longer invoke the appellate court's jurisdiction." *See Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) (construing predecessor to Rule 26.3); *John v. RLJ Equities, LLC*, No. 03-20-00019-CV, 2020 WL 594489, at *1 (Tex. App.—Austin Feb. 6, 2020, no pet.) (mem. op.); *see also* Tex. R. App. P. 2 (establishing that appellate courts may not "alter the time for perfecting an appeal in a civil case").

The district court signed the final judgment on April 27, 2020. The Greens filed their requests for findings and conclusions the following day, which extended the deadline to July 27, 2020. *See* Tex. R. App. P. 26.1(a)(4). The Greens timely filed their notice of appeal on July 21, 2020, meaning the Villas' notice of cross-appeal was due fourteen days later, on August 4, 2020. *See id.* R. 26.1(d). The Villas filed their notice of appeal on August 20, 2020 and a motion for extension of time to file the notice on August 24, 2020. The Villas did not dispute in their motion that the notice of appeal was untimely under the rules of appellate procedure. Instead, the Villas argued that this Court had independent authority under the supreme court's then-applicable emergency order to extend all appellate deadlines, including for the filing of the notice of appeal. This Court granted the motion on November 6, 2020 without explaining our reasoning. The Greens ask us to revisit this decision, and the Villas have responded in their brief. We will grant the Greens' request to reconsider this matter because "we have an obligation to examine our jurisdiction any time it is in doubt[.]" *Pike*, 610 S.W.3d at 774.

As the source of our purported authority to extend the deadline, the Villas rely on the twenty-first emergency order, which provides:

> Any deadline for the filing or service of any civil case that falls on a day between March 13, 2020, and September 1, 2020, is extended until September 15, 2020. This does not include deadlines for perfecting appeal or for other appellate proceedings, *requests for relief from which should be directed to the court involved and should be generously granted.*

*Twenty-First Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 128, 129 (Tex. 2020) (order) (emphasis added). The Villas argue that the italicized text granted the appellate courts "authority and jurisdiction" to extend the deadline for filing the notice of appeal.

18

We construe court orders, including the supreme court's emergency orders, "according to the plain meaning of their terms." *Kim v. Ramos*, ___ S.W.3d ___, ___, No. 01-20-00861-CV, 2021 WL 2692143, at *9 (Tex. App.—Houston [1st Dist.] July 1, 2021, no pet.). In doing so, we construe the order as a whole and seek to give effect to every part. *See Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam); *In re Piatt Servs. Int'l, Inc.*, 493 S.W.3d 276, 281 (Tex. App.—Austin 2016, orig. proceeding [mand. denied]).

While the order states that "requests for relief" from deadlines for perfecting appeal should be "generously granted," nothing in the order alters the rules of appellate procedure or purports to grant jurisdiction where none would otherwise exist. Construing the order as a whole, we conclude that the supreme court's admonition to "generously grant[]" requests for extension of appellate deadlines was a direction to "courts to exercise their discretion liberally where that discretion exists" under the rules of appellate procedure. *See Cantu v. Trevino*, No. 13-20-00299-CV, 2020 WL 6073267, at *5 (Tex. App.—Corpus Christi–Edinburgh Sept. 24, 2020, no pet.) (mem. op.). In other words, the twenty-first emergency order does not empower us to extend the deadline for perfecting appeal beyond the time authorized by Rule 26.3.[3] *See id.* (reaching same conclusion); *Satterthwaite v. First Bank*, No. 02-20-00182-CV, 2020 WL 4359400, at *1 n.1 (Tex. App.—Fort Worth July 30, 2020, no pet.) (mem. op.) (same);

---

[3] This Court recently assumed without deciding that the twenty-second emergency order granted us discretion to extend appellate deadlines and evaluated the merits of the appellant's motion to extend. *Porch v. Daimler Trucks N. Am., LLC*, No. 03-20-00445-CV, 2020 WL 7063575, at *2 (Tex. App.—Austin Dec. 3, 2020, pet. denied) (mem. op.). We do not do the same here because the two orders have substantially different language. The twenty-second order authorizes "all courts in Texas" to "modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order" except in certain family-law cases. *Twenty-Second Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 129, 129 (Tex. 2020). The twenty-first order contains nothing analogous. *See generally Twenty-First Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 128, 129 (Tex. 2020).

*Lane v. Lopez*, No. 14-20-00633-CV, 2020 WL 6439689, at *1 & n.1 (Tex. App.—Houston [14th Dist.] Nov. 3, 2020, pet. denied) (mem. op.) (same); *see also In re D.W.*, 249 S.W.3d 625, 639–40 (Tex. App.—Fort Worth 2008, no pet.) ("The rules of civil and appellate procedure have the force and effect of statutes and as binding supreme court decisions.").

Because a late-filed notice of appeal does not confer jurisdiction on this Court, we have no option but to dismiss the Villas' cross-appeal for want of jurisdiction. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d at 307.

## CONCLUSION

We dismiss the cross-appeal for want of jurisdiction. We modify the judgment to condition the award of appellate attorney's fees on the Villas succeeding on appeal, and we affirm the judgment as modified. Tex. R. App. P. 43.2(b).

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Modified and, as Modified, Affirmed in Part; Dismissed in Part

Filed: October 22, 2021

20